### SHERMAN *vs.* SMITH.

The State of New York established a general banking law, containing a provision that members of an association, organized under it, should not be individually liable for its debts unless by their own agreement, but reserving to the State the right to repeal or change the law. Afterwards an amendment to the State constitution and an act of the Legislature declared that the shareholders of all banks which should continue to issue notes after a certain time must be individually responsible. *Held:*

1. That the stockholders of a bank, organized under the general banking law before the amendment of the constitution, are liable for the debts of the association in their individual capacity.

2. That the articles of association, made by the stockholders at the time they organized themselves as a bank, were not a contract with the State.

3. That the change made by the constitution and subsequent act of the Legislature were not the less constitutional and valid, as against this bank, because the stockholders, in their articles of association, had declared that they would not be individually bound for the debts of the concern.

Writ of error to the Supreme Court of New York.

Oliver Lee & Company's Bank, at Buffalo, was organized in January, 1844, under the act of the Legislature to authorize banking, passed 18th April, 1838. Watts Sherman was one of the shareholders. In the articles of association it was agreed that the shareholders should not be liable, individually, for the debts of the bank, and this was in accordance with the act of 1838, under which the association was organized, and which declared that no shareholder should be liable unless the articles

of association signed by himself made :im so. But this act contained a provision that the Legislature might at any time alter or repeal it. In 1846 a change was made in the constitution of the State which imposed individual liability on the stockholders of banks, and in 1849 the statute was passed under which this procceding was commenced and carried on to enforce that responsibility.

In 1857 Henry B. Gibson, one of the stockholders, presented his petition, agreeably to the act of 1849, to a judge of the Supreme Court of the State, setting forth that this bank was insolvent, and praying that it might be declared so and a receiver appointed, and such other relief given as might be required. The proceeding thus begun ended in a judgment of the Supreme Court, affirmed by the Court of Appeals, making Watts and the other stockholders liable in their individual capacity for an amount of the debts equal to their stock. James M. Smith, the defendant in error, was appointed receiver.

The question argued here was, whether the constitution of 1846 and the statute of 1849 were or were not in conflict with that provision in the Federal Constitution which forbids the States to make any law impairing the obligation of contracts. The point was raised below, but was decided against the stockholders in every court to which the cause was carried, including the highest.

*Mr. Peck*, of New York, (with whom was *Mr. Porter* and *Mr. John Van Buren*,) for the plaintiff in error, cited: 1 Parsons on Contracts, 399; *Miller* vs. *N. Y. & Erie R. R. Co.*, (21 Barbour, 513, 519;) *Ham* vs. *McClairs*, (1 Bay., 93;) *Calder and Wife* vs. *Bull and Wife*, (2 Dall., 398;) *Bennett* vs. *Boggs*, (1 Bald., 74;) *Schuyler et al.* vs. *McCrea*, (1 Har. & J., 249;) *Commonwealth* vs. *McCloskey et al.*, (2 Rawle, 374;) *Allen* vs. *McKean*, (1 Sumner, 302, 303;) *State Bank of Ohio* vs. *Knoop*, (16 How., 385;) *The L. & C. Co.* vs. *Town*, (1 N. H., 44;) *Winter* vs. *Muscogee R. & Co.*, (11 Georgia, 438;) *Kean* vs. *Johnson et al.*, (1 Stockton, 401;) *Ex parte Johnson*, (31 Eng. L. & Eq.;) 21 Barbour, 519, *supra*; *Livingston* vs. *Lynch et al.*, (4 Johnson Chy., 573, 582, 595–598;) 1 Sumner, 314; Laws of 1849, 340, Sec. 3; *Hart-*

*ford R. R. Co.* vs. *Crosswell*, (5 Hill, 383, 386;) *Green* vs. *Biddle*, (8 Wheaton, 2, 92;) *Dodge* vs. *Woolsey*, (18 Howard, 331, 359;) *Piqua Bank* vs. *Knoop*, (16 Howard, 369;) *Allen* vs. *McKean*, (1 Sumner, 278, 313, 314;) *Livingston* vs. *Lynch et al.*, (4 Johnson Chy., 573, 582, 595–598;) *R.* vs. *M. & I. R. R. Co. and P. & J. R. R. Co.*, (21 Howard, 442;) *Mason* vs. *Finch*, (2 Scam., 223;) *McFarland* vs. *State Bank*, (1 Pike, 410;) *State* vs. *Williams*, (2 Strobh., 474;) *Town Ottawa* vs. *County La Salle*, (12 Ill., 339;) 2 Roll. Abr., 409; *Taylor* vs. *Homersham*, (4 M. & S., 426;) 2 Parsons on Contracts, p. 13, N. r, and cases there cited; *Lyman* vs. *Clark*, (9 Mass., 235;) *Jackson ex dem. Stevens* vs. *Stevens*, (16 Johnson, 110;) *Covington* vs. *McNickle*, (18 B. Monroe, 262;) *Jackson* vs. *Stackhouse*, (1 Cowan, 122;) *Torrence* vs. *McDougald*, (18 Georgia, 526;) 7 Bar. and Cross., 643, Bu. and Brandling; *Townley* vs. *Gibson*, (2 Tenn., 701;) 1 Coke, 68, Alton Woods; Plowden, 365, Duke of Norfolk's case; 5 Greenleaf's Crim., 19, Sec. 44; 5 Greenleaf's Crim., Tit. Private Acts and King's Grants, pp. 1–53; 4 Greenleaf's Crim., 174, Sec. 26—300, Sec. 8—303, Sec. 15—345, Sec. 62, note 1; *Mitchell* vs. *Doggett*, (1 Branch, 356;) *Henry* vs. *Tilson*, (17 Verm., 479;) *City of St. Louis* vs. *Russel*, (9 Miss., 507;) *Fletcher* vs. *Peck*, (6 Cran., 87;) *Dash* vs. *Van Kleek*, (7 Johnson, 417;) *People* vs. *Clark*, (3 Selden, 385;) *Gilmore* vs. *Shuter*, (2 Mod.;) *Couch* vs. *Jeffries*, (4 Burr., 2460;) *Sayer and Wife* vs. *Wisner*, (8 Wendel, 661;) 1 Harr., 285, *supra*; 1 Branch, 356, *supra*; *Hooker* vs. *Hooker*, (10 S. & M., 599;) *Bruce* vs. *Schuyler*, (4 Gilm., 221;) *Morlot* vs. *Lawrence*, (1 Blatch. Ct. Ct., 608;) *United States* vs. *Cases Cloths*, (Crabbe, 356;) 4 Pike, 410, *supra*; *Town Ottawa* vs. *County La Salle*, (12 Ill., 339;) *Brown* vs. *County Comm's*, (21 Penn.;) *Sackett* vs. *Andross*, (5 Hill, 527,) elaborate opinion of Brown, J.; *Quackenbush* vs. *Danks*, (1 Denin, 128;) *Dewart* vs. *Purdy*, (29 Penn., 113;) *U. S.* vs. *Stane*, (1 Hemp., 469;) *Aurora and L. T. Co.* vs. *Holdhow*, (7 Ind., 50;) *Brown* vs. *Fifield*, (4 Mich., 322;) *People* vs. *C. Comm's*, (3 Scam., 153;) *Barnes* vs. *Mayor Mobile*, (19 Ala., 707;) *Bruce* vs. *Schuyler*, (4 Gilm., 221;) *Brown et al.* vs. *Lever, Sheriff, &c.*, (5 Hill, 221.)

*Mr. Ganson,* of New York, contra, cited 21 N. Y. Rep., 9; 22 N. Y. Rep., 9; 1 Rev. St., 600; *Pl. R. Co.* vs. *Thatcher,* (1 Kernan, 102;) *R. R. Co.* vs. *Dudley,* (4 Kernan, 336;) *Northern R. R. Co.* vs. *Miller,* (10 Bach., 260;) *White* vs. *R. R. Co.,* (14 Bach., 559;) *Stanley* vs. *Stanley,* (26 Maine R., 191;) *Charles River Bridge* vs. *Warren Bridge,* (11 Pet., 549;) *Ohio Ins. & Tr. Co.* vs. *Debolt,* (16 How., 416;) *Bank of Columbia* vs. *Attorney General,* (3 Wend., 588.)

Mr. Justice NELSON. This is a writ of error to the Supreme Court of the State of New York.

The proceeding was instituted under an act of the Legislature of the State of New York, to enforce the responsibility of stockholders in certain banking corporations or associations.

The judge before whom the proceedings were instituted declared the bank insolvent, and appointed Smith, the defendant in error, the receiver to take charge of its assets, and to perform such other duties as the law imposed.

The case was afterwards referred to Judge Hall, as a referee, to apportion the debts and liabilities of the bank which had been contracted after the first day of January, 1850, and remained unsatisfied among the stockholders, ratably in proportion to their stock, according to the principles declared by an act passed April 5, 1849, and report to the court. Judge Hall reported that the capital of the bank was $170,000, and its indebtedness $502,944 22; and further, that the assets in the hands of the receiver, and an assessment upon the stockholders of an amount equal to the capital of the bank, would be insufficient to discharge its debts and liabilities, and hence apportioned upon each of the stockholders an amount equal to the amount of stock held by them respectively in the bank. The sum of $7,000 was assessed upon the plaintiff in error.

The referee further reported, that this bank was an association formed 23d April, 1844, under the general banking law of the State, passed 18th April, 1838; and inserted in his report a copy of the articles of association, among which is one that declares: "The shareholders of this association shall not

be liable in their individual capacity for any contract, debt, or engagement of the association."

The counsel for the plaintiff in error appeared before the referee and objected to the assessment, on the ground, among others, that the clause in the articles of association above referred to, and which were authorized by the general banking act of 1838, constituted a contract; that the stockholders were not to be made individually liable for the debts of the association, which was protected by the Constitution of the United States; and that the provision of the constitution of the State of New York, of 1846, imposing upon them individual liability, and the act of the Legislature of 1849 carrying it into effect, were inoperative and void. The counsel further objected, that a reservation by the State, in express terms, of a power to impair by subsequent laws the obligation of contracts between individual citizens, lawful at the time it was made, would be in conflict with the Federal Constitution.

Numerous other objections were taken to the assessment before the referee, but the above are the only ones material to notice in this court.

The referee overruled these objections, and the report was afterwards confirmed by the judge.

This judgment, confirming the report, was appealed from to the Supreme Court of the State, which affirmed it. An appeal was afterwards taken to the Court of Appeals, the highest court in the State of New York, in which the judgment in the Supreme Court was affirmed, and the record remitted to that court to have the judgment carried into execution.

As this case comes before us under the 25th section of the judiciary act, the only question involved is, whether or not the court below erred in denying a right set up by the plaintiff in error under the Constitution of the United States; in other words, whether the constitution of the State of New York of 1846, or the act of the Legislature of 1849, or both, which subjected the stockholders of the bank to personal liability for its debts accruing after the first day of January, 1850, impaired the obligation of any contract with the stockholders in its charter?

The general banking law of 1838, under which this bank was organized, provided in the 23d section, that "no shareholder of any such association shall be liable in his individual capacity for any contract, debt, or engagement of such association, *unless the articles of association by him signed shall have declared that the shareholder shall be liable.*"

The 15th section provided, that "any number of persons may associate to establish offices of discount, deposit, and circulation, upon the terms and conditions, and subject to the liabilities, prescribed in this act."

One of the articles of association, as we have already seen, provided, that the shareholders should not be liable in their individual capacities for any contract, debt, &c.

The 32d section of the general banking act provided, that "the Legislature may at any time alter or repeal this act."

The argument on the part of the plaintiff is, that this stipulation of the stockholders in the articles of association from exemption from all personal liability for the debts of the institution, constitutes a contract within the authority of the act under which it was organized, that cannot be legally impaired by the provision in the constitution of New York, or by the act of 1849, which seeks to change the obligation, and impose upon them personal liability; that, in respect to this bank, the provision in the constitution and the law are void as against the Constitution of the United States.

Now, in the first place, it is to be observed, that the article of association relied on is but an affirmation of the principle contained in the 23d section of the act of 1838, and can be entitled to no greater effect or operation than the law itself, unless, indeed, by incorporating it into the articles, it can be made permanent or perpetual. The section expressly exempts the individual liability of the stockholder, but confers the privilege upon the association to subject him to personal liability if they think fit. It was competent for the stockholders to avail themselves of this privilege in their articles of association, and thus, perhaps, increase public confidence in the credit of the institution. But we can discover no authority in the section or any necessity or propriety on the part of

the association, for incorporating the law itself into their articles. Certainly, in so doing they cannot change it, or make it more or less effectual.

In the second place, we remark, that this article of association is not within any authority conferred on the stockholders by any provision of the general banking law.

By the 15th section, any number of persons may associate to establish offices, &c., upon the terms and conditions, and subject to the liabilities, prescribed by the act. These terms and conditions, as it respects the personal liability of the stockholders, are found in the 23d section, which exempts them, unless they see fit to impose it upon themselves. It is not in their power to change the rule of liability except as specified in the section, and that they have not attempted.

This article of association, therefore, being a mere attempt to re-enact a provision of the law, and this even without any authority in the general charter, cannot be regarded as a contract in any legal sense of the term, and, of course, not within the protection of the provision of the Constitution of the United States.

Another view of this question, even assuming that the stipulation of the stockholders in the article of association amounted to a contract, is equally conclusive against the stockholder.

According to the 15th section, the association was authorized to establish a bank of discount, deposit, and circulation, "upon the terms and conditions, and subject to the liabilities, prescribed in this act." It was not competent for the association to organize their bank upon any other terms or conditions, or subject to any other liabilities, than those prescribed in the general charter. Now, the 32d section, which reserved to the Legislature the power to alter or repeal the act, by necessary construction, reserved the power to alter or repeal all or any one of these terms and conditions, or rules of liability, prescribed in the act. The articles of association are dependent upon, and become a part of, the law under which the bank was organized, and subject to alteration or repeal, the same as any other part of the general system.

The saving clause in the constitution of the State of New York has been referred to, which provided, that "nothing contained in this constitution shall affect *any grants or charters to bodies politic or corporate made by this State, or by persons acting under its authority.* This provision saved the charter of the bank in this case and all others organized under the general banking law, as well as all those created by special charters, but it saved each of them as a whole, as an entirety; the charters remained after the adoption of the constitution the same as before, with all their privileges and disabilities intact. We do not perceive that this provision has any bearing upon the question in the case.

It is unimportant to inquire into the effect of this provision of the constitution of the State of New York, or of the act of 1849, when applied to the personal liability of the stockholder for debts of the bank existing at the adoption of the one or the passage of the other, as no such question is presented in the case. The constitution imposed the liability only in respect to all debts contracted after the first day of January, 1850, and the act of 1849 simply carries the provision into execution. Neither do we inquire whether or not this constitutional provision applied to existing banks, as that question has been determined by the State court, to which it belonged. Our inquiry has been, assuming this to be the true construction, whether or not any contract in the charter of the bank with the State has been impaired within the meaning of the Constitution of the United States, and we are perfectly satisfied that the answer must be in the negative.

*Judgment of the State court affirmed.**

---

* Mr. Justice *Nelson* also, and at the same time, delivered the judgment of the court in the case of *Watts and Sherman* vs. *Smith*, in which the same question of law was presented, and decided in the same way.