# LOOKER v. MAYNARD.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 4. Submitted December 2, 1898. Decided October 15, 1900.

A power reserved by the constitution of a state to its legislature, to alter, amend or repeal future acts of incorporation, authorizes the legislature, in order "to secure the minority of stockholders, in corporations organized under general laws, the power of electing a representative membership in boards of directors," to permit each stockholder to cumulate his votes upon any one or more candidates for directors.

THIS was an information in the nature of a *quo warranto*, filed August 1, 1896, in the Supreme Court of the State of Michigan, by Fred A. Maynard, Attorney General of the State, at the relation of Joseph W. Dusenbury and Will J. Dusenbury, against Oscar R. Looker, Charles A. Kent, Will S. Green, William A. Moore, Louis H. Chamberlain, William C. Colburn, Benjamin J. Conrad, John J. Mooney and Michael J. Mooney, to try the rights of the defendants and of the relators respectively to the offices of members of the board of directors of the Michigan Mutual Life Insurance Company. The right to those offices was claimed by the defendants under the original articles of association of the company under the general laws of Michigan; and by the relators under a statute subsequently enacted by the legislature of the State, which the defendants contended to be unconstitutional and void as impairing the obligation of the contract made between the State and the corporation by its original organization.

The Constitution of Michigan, adopted in 1850, art. 15, sec. 1, is as follows : " Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All laws passed pursuant to this section may be amended, altered or repealed." 1 Charters and Constitutions, 1008.

The general law of Michigan of March 30, 1869, entitled

"An act. in relation to life insurance companies transacting business within this State," contained the following provisions:

By § 1, " Any number of persons not less than thirteen may associate together and form an incorporated company for the purpose of making insurance upon the lives of individuals, and every insurance pertaining thereto, and to grant, purchase and dispose of annuities."

By § 2, " The persons so associating shall subscribe articles of association, which shall contain "— "4. The manner in which the corporate powers are to be exercised, the number of directors and other officers, and the manner of electing the same, and how many of the directors shall constitute a quorum, and the manner of filling all vacancies." "7. Any terms and conditions of membership therein, which the corporators may have agreed upon, and which they may deem important to have set forth in such articles."

By § 5, " The articles of association shall be submitted to the attorney general for his examination, and if found by him to be in compliance with this act, he shall so certify to the secretary of state." Stat. 1889, c. 77; 1 Laws of Michigan of 1869, p. 124.

Under that statute, the Michigan Mutual Life Insurance Company was duly organized July 3, 1870, with articles of association, the fourth of which provided as follows:

" The corporate powers of the company shall be exercised by a board of directors, which shall consist of twenty-one members, which may be increased at the option of the board to not more than forty. The first meeting for the election of directors shall be called by the present officers, and held as soon as practicable after these articles shall take effect. No person shall be eligible who is not owner of at least ten shares of the guarantee capital of the company, and at least two thirds of the directors shall be residents of the State of Michigan. The board, at their first meeting, shall divide themselves by lot into three equal classes, as near as may be, whose terms of office shall expire at the end of one, two and three years respectively, and thereafter one third of the directors shall be chosen annually for the class whose term then expires, who shall hold office for three years,

or until their successors are elected; but the first board of directors, whose terms shall not have expired previous to the last Tuesday in January, shall continue in office until the last Tuesday in January following. The election of directors shall be had at the annual meeting of the company, which shall be held on the last Tuesday in January at the office of the company in Detroit. They shall be chosen by ballot, and a majority of all the votes cast shall elect. Every shareholder shall be entitled to one vote for directors for every share of guarantee capital standing in his name on the books of the company and may vote in person or by proxy. And every policy-holder insured in this company for the period of his natural life in the sum of not less than five thousand dollars shall also be entitled to one vote in the annual election of directors, which vote must be given in person."

In 1885 the legislature of Michigan passed an act entitled "An act to secure the minority of stockholders, in corporations organized under general laws, the power of electing a representative membership in boards of directors," the first section of which provided as follows: "In all elections for directors of any corporation organized under any general law of this State, other than municipal, every stockholder shall have the right to vote, in person or by proxy, the number of shares of stock owned by him for as many persons as there may be directors to be elected; or to cumulate said shares, and give one candidate as many votes as will equal the number of directors multiplied by the number of shares of his stock; or to distribute them on the same principles among as many candidates as he shall think fit. All such corporations shall elect their directors annually, and the entire number of directors shall be balloted for at one and the same time, and not separately." Stat. 1885, c. 112; Public Acts of 1885, p. 116.

Directors were elected in accordance with the articles of association until the annual meeting of January 28, 1896, when, the whole number of directors being twenty-seven, of whom nine were elected annually, the whole number of votes for directors was 4893; the nine defendants received 3655 votes each; and Joseph W. Dusenbury, representing in his own right or by proxy

1238 shares, undertook, under the statute of 1885, to multiply the number of his shares by nine, making the number 11,142, and, dividing this number equally, cast 5571 votes for himself and 5571 for Will J. Dusenbury; and, if his claim had been allowed, they two, the relators in this case, would have been elected directors. But his claim was rejected, his vote was allowed on 1238 shares only, and the nine defendants were declared elected, and assumed and since exercised the offices of directors.

The Supreme Court of Michigan held the statute of 1885 to be constitutional and valid, and adjudged that the relators were elected directors, and should have been so declared. 111 Michigan, 498. The defendants sued out this writ of error.

*Mr. C. A. Kent* for plaintiff in error.

I. The articles of association of the Michigan Company as to the method of electing directors constituted a legal contract between the original stockholders, binding on their successors, protected by the Constitution of the United States against state interference, except so far as the power to change the contract has been reserved.

This law is unusual. Generally, the statute provides for the government of corporations by mandatory provisions. Here, the matter is designedly and explicitly left to the agreement of the corporators, and this offer of the power of agreement is made for the benefit of the corporators to induce them to engage in a proposed enterprise. Articles of association are generally contracts by the members. Cook on Stock and Stockholders, sec. 492; *Zabriskie* v. *Hackensack R. R. Co.*, 18 N. J. Eq. 178; *Snook* v. *Georgia Improvement Co.*, 83 Ga. 61; 1 Morawetz on Corporations, sec. 43 and *seq.*

It is uniformly held, that where the charter of a company provides a method of electing directors and there is no reservation of a power to change, the legislature has no power to change such provisions in favor of minority representation. If this is true when the provision is embodied in a contract with the state, it must be more true when the contract is be-

tween the corporators. *Hays* v. *Commonwealth*, 82 Penn. St. 518; *Baker's Appeal*, 107 Penn. St. 461; *Missouri* v. *Greer*, 78 Missouri, 188; *Smith* v. *Atchison, Topeka & Santa Fé Railroad Co.*, 64 Fed. Rep. 272.

II. The power to change the method by which directors are elected is not reserved in the statute. It is claimed under a general provision in the State Constitution.

The repeal or amendment of the law would not affect the contract between the corporators as to management of their property. It would only take away their powers to continue the business of insurance as a corporation. Unless forbidden the stockholders could continue the business of life insurance as a partnership. At any rate, they could wind up the business in the name of the corporation, and the method of electing directors would continue as before. *Bewick* v. *Alpena Harbor Improvement Co.*, 39 Mich. 700.

Any amendment of the law like an amendment to any other law would not affect lawful contracts entered into before the amendment. The amendment might forbid new corporations to make agreements except in accordance with the minority representation statute; but the power to amend does not cover the power to change pre-existing contracts. The provision in state constitutions authorizing the amendment or repeal of all laws for the formation of corporations, is intended simply to protect the public against corporation monopolies and corporation abuses. It is not designed to affect the contracts of the corporators among themselves as to the control of their interests in the property.

III. I have found no cases in conflict with the view I seek to maintain, though there may be some which appear to do so; citing *Sherman* v. *Smith*, 1 Black, 587; *In re Lee & Co. Bank*, 21 N. Y. 9; *The Reciprocity Bank*, 22 N. Y. 9; *Close* v. *Glenwood Cemetery*, 107 U. S. 466; *Pennsylvania College Cases*, 13 Wall. 190; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; *Greenwood v. Freight Co.*, 105 U. S. 13.

IV. See also *Orr* v. *Bracken County*, 81 Kentucky, 593; *Zabriskie* v. *Hackensack & New York Railroad Co.*, 18 N. J. Eq. 178; *Snook* v. *Georgia Improvement Co.*, 83 Georgia, 61;

*Fisher* v. *Patton,* 33 S. W. Rep. 451 ; *Detroit* v. *Detroit & Howell Plank Road Co.,* 43 Mich. 140 ; *People* v. *O'Brien,* 111 N. Y. 1 ; *Hill* v. *Glasgow Railroad Co.,* 41 Fed. Rep. 610 ; *Southern Pacific Railroad Co.* v. *Board of Railroad Commissioners of California,* 78 Fed. Rep. 236 ; *Tomlinson* v. *Jessup,* 15 Wall. 454; *Shields* v. *Ohio,* 95 U. S. 319.

V. Another error alleged is that the judgment of the court below deprives respondents and other stockholders of their right to participate in the management of their property, according to their agreement, without due process of law, in violation of the fourteenth amendment. The subject of vested rights in the control of property is so ably argued in three dissenting opinions in the *Sinking Fund Cases,* that I need only to refer to them, 99 U. S. 700, 731, and *seq.*

Though the majority of the court did not agree with the dissenting judges in the decision of that case, yet the difference was probably not in the principles advocated but in their application to the case then at bar.

No brief was filed for the defendants in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The single question in this case is whether a power, reserved by the constitution of a State to its legislature, to alter, amend or repeal future acts of incorporation, authorizes the legislature, in order (as declared in the title of the statute of Michigan now in question) " to secure the minority of stockholders, in corporations organized under general laws, the power of electing a representative membership in boards of directors," to permit each stockholder to cumulate his votes upon any one or more candidates for directors.

By the decision in the leading case of *Dartmouth College* v. *Woodward,* 4 Wheat. 518, it was established that a charter from the State to a private corporation created a contract, within the meaning of the clause in the Constitution of the United States forbidding any State to pass any law impairing

the obligation of contracts; and consequently that a statute of the State of New Hampshire, increasing the number of the trustees of Dartmouth College as fixed by its charter, and providing for the appointment of a majority of the trustees by the executive government of New Hampshire, instead of by the board of trustees as the charter provided, was unconstitutional and void.

Mr. Justice Story, in his concurring opinion in that case, after declaring that in his judgment it was " perfectly clear that any act of a legislature which takes away any powers or franchises vested by its charter in a private corporation, or its corporate officers, or which restrains or controls the legitimate exercise of them, or transfers them to other persons, without its assent, is a violation of the obligations of that charter," took occasion to add : " If the legislature mean to claim such an authority, it must be reserved in the grant." 4 Wheat. 712.

After that decision, many a State of the Union, in order to secure to its legislature the exercise of a fuller parliamentary or legislative power over corporations than would otherwise exist, inserted, either in its statutes or in its constitution, a provision that charters thenceforth granted should be subject to alteration, amendment or repeal at the pleasure of the legislature. See *Greenwood* v. *Freight Co.*, 105 U. S. 13, 20, 21. The effect of such a provision, whether contained in an original act of incorporation, or in a constitution or general law subject to which a charter is accepted, is, at the least, to reserve to the legislature the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs. *Sherman* v. *Smith*, 1 Black, 587; *Miller* v. *State*, 15 Wall. 478; *Holyoke Co.* v. *Lyman*, 15 Wall. 500; *Sinking Fund Cases*, 99 U. S. 700, 720, 721; *Close* v. *Glenwood Cemetery*, 107 U. S. 466; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; *New York & New England Railroad* v. *Bristol*, 151 U. S. 556.

As illustrations of the right of the legislature, exercising such a reserved power, to alter for the future the liability of stockholders to creditors of the corporation, or the mode of computing the votes of stockholders for directors, it will be sufficient to state two of the cases just cited.

The case of *Sherman* v. *Smith*, 1 Black, 587, was as follows: The general banking act of New York of 1838, c. 260, provided, in § 15, that any number of persons might associate to establish a bank, upon the terms and conditions, and subject to the liabilities prescribed in this act; in § 23, that no shareholder of any association formed under this act should be individually liable for its debts, unless the articles of association signed by him should declare that the shareholder should be liable; and, in § 32, that the legislature might at any time alter or repeal this act. The articles of association of a corporation organized under this act in 1844 expressly provided that the shareholders should not be individually liable for its debts. By provisions of the constitution of New York of 1846, art. 8, sec. 2, and of the general statute of 1849, c. 226, the shareholders of all banks were made liable for debts contracted by the bank after January 1, 1850. This court unanimously held that these provisions were not unconstitutional as impairing the obligation of a contract.

The case of *Miller* v. *State*, 15 Wall. 478, was this: By the Revised Statutes of New York of 1828, c. 18, tit. 3, it was enacted that "the charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension and repeal, in the discretion of the legislature." The constitution of New York of 1846, art. 8, sec. 1, ordained as follows: "Corporations may be formed under general laws but shall not be created by special act," except in certain cases. "All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed." 2 Charters and Constitutions, 1363. In 1850 the legislature passed a general railroad act authorizing the formation of railroad corporations with thirteen directors, and providing that the subscribers to the articles of association and all who should become stockholders in the company should become a corporation, and "be subject to

the provisions contained in " the aforesaid title of the Revised Statutes.    Stat. 1850, c. 140, § 1.    In the same year, a railroad corporation was organized under that act for the construction of a railroad from the city of Rochester to the town of Portage ; and in 1851, by a statute amending the charter of the city of Rochester, that city was authorized to become a stockholder in the corporation, and to appoint four of the thirteen directors. Stat. 1851, c. 389, § 24.    In 1867, the legislature passed another statute, authorizing the city to appoint seven of the thirteen directors.    Stat. 1867, c. 59.    This court upheld the validity of the latter statute, upon the ground that the reservation in the constitution of 1846, and in the statutes of 1828 and 1850, of the power to alter or repeal the charter, clearly authorized the legislature to augment or diminish the number, or to change the apportionment, of the directors as the ends of justice or the best interests of all concerned might require.    15 Wall. 492, 498.    The full extent and effect of the decision are clearly brought out by the opinion of two justices who dissented for the very reason that the agreement with respect to the number of directors which the city should elect was not a part of the charter of the company, but was an agreement between third parties, outside of and collateral to the charter, and which the legislature could not reserve the power to alter or repeal.    15 Wall. 499.    That case cannot be distinguished in principle from the case at bar.

Remembering that the *Dartmouth College case*, (which was the cause of the general introduction into the legislation of the several States of a provision reserving the power to alter, amend or repeal acts of incorporation,) concerned the right of a legislature to make a change in the number and mode of appointment of the trustees or managers of a corporation, we cannot assent to the theory that an express reservation of the general power does not secure to the legislature the right to exercise it in this respect.

*Judgment affirmed.*