C. H. VENNER CO. et al. v. UNITED STATES STEEL CORP. et al.

(Circuit Court, S. D. New York. June 9, 1902.)

1. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACT—STOCKHOLDERS IN COR-
PORATIONS.

A charter of a corporation which authorizes the issuance of common
stock, preferred stock, and bonds, and gives the corporation the right
to increase the bond issue "for any object in and about its business,"
and to decrease its capital stock by purchasing certain shares for retire-
ment, does not create a contract which entitles a stockholder to perma-
nency in the relative proportions of the different classes of stock or of
stock and bonds, which is impaired by an act of the legislature author-
izing corporations to issue and sell bonds for the purpose of retiring
stock.

2. SAME—STATUTE AMENDING CHARTER OF CORPORATIONS—EFFECT OF RESER-
VATION OF POWER.

Where the general incorporation statute of a state reserves to the state
the power to alter, suspend, or repeal the charter of any corporation, in
the discretion of the legislature, such reservation becomes a part of the
contract of every stockholder in a corporation organized thereunder; and
an amendatory act authorizing such corporations to increase their bond
issues, for the purpose of retiring a portion of their stock, is not uncon-
stitutional, as impairing the contracts of stockholders.

In Equity. On motion for preliminary injunction.

George H. Yeaman, for complainant.

Francis Lynde Stetson and Wm. D. Guthrie, for defendant.

LACOMBE, Circuit Judge. This suit is brought to enjoin the
carrying out of a proposed readjustment of stock and bonds of defend-
ant corporation. There is now authorized $304,000,000 first mort-
gage bonds, $550,000,000 of preferred stock, and $550,000,000 of com-
mon stock. It is proposed to retire $200,000,000 of preferred stock
by exchanging therefor $200,000,000 of bonds, additional and subordi-
nate to the first mortgage bonds, at the same time selling $50,000,000
of new bonds for cash to be used for betterments, et cetera. The
corporation was organized a little over a year ago, under an act of the
state of New Jersey concerning corporations (Revision of 1896), and
the acts amendatory and supplemental thereto. It was disputed be-
tween the parties, upon the argument, whether, under the provisions
of these acts and of the certificate of incorporation, there was power
in the corporation to take the action it proposed. It will not be nec-
essary to discuss that issue, because it is not disputed that an
amendatory act which was passed March 28, 1902, expressly authorizes
the changes proposed in the very manner in which they are sought to
be made. It is contended, however, that the act of March 28, 1902,
is null and void, because it "impairs the obligation of a contract,"
contrary to the provisions of the constitution of the United States; the
"contract" being the contractual relations established between the
holders of the different securities by reason of the respective amounts
of such securities of different classes, the differing rates of interest
thereon, their different measures of participation in profits, or divid-
ends, or assets, which were prescribed when the corporation was
organized and the present holders bought their stock. Examination

of the statute and of the certificate of incorporation shows that it was expressly provided that the bonded debt might be increased by new issues "for any object in and about its business"; that its capital might be decreased by the purchase at not above par of certain shares for retirement. Certainly permanency in the relative proportions of the different securities was no part of the contract. There was no express provision when the corporation was formed that bonds might be issued to retire stock, instead of purchasing it for cash. But the New Jersey act concerning corporations contains the provision so frequently found in constitutions and statutes, that "the charter of every corporation shall be subject to alteration, suspension and repeal, in the discretion of the legislature." This reservation of the right to alter a charter is as much a part of the contract entered into by the stockholders when they subscribe or buy into the corporation as is the most minute provision as to some detail of organization, specifically expressed. Similar words in other statutes have been given a very broad construction by the supreme court. In Sherman v. Smith, 1 Black, 587, 17 L. Ed. 163, it appeared that a bank had been formed in 1844, under a general banking act of the state of New York, which provided that no shareholder of any association formed thereunder should be individually liable for its debts, unless the articles of association signed by him should declare that he should be liable. There was no such declaration in the articles. By subsequent provisions in the New York constitution of 1846 and the General Statutes of 1849, the shareholders of all banks were made liable for debts contracted by the bank after January 1, 1850. The court held that this did not impair the obligation of a contract, because a section of the general banking act under which the bank was formed expressly reserved to the legislature the right to alter or repeal. It might be suggested that the amendments in the case last cited affected only the relations between the bank and outside parties, not those subsisting between different members of the association. In Miller v. State of New York, 15 Wall. 478, 21 L. Ed. 98, however, the amendment affected only the stockholders. The general railroad law of New York authorized the formation of railroad corporations with 13 directors. A company was formed with a capital of $800,000 to build a railroad 50 miles long. The legislature authorized the city of Rochester to subscribe $300,000 to it, and enacted that, if the company accepted the subscription, the city should appoint one director for every $75,000 subscribed by it; that is to say, should appoint four directors out of the thirteen, the other stockholders appointing the remaining nine. Fifteen years later the legislature passed another act, giving the city power to appoint one director for every $42,855.57 of stock owned by it, the effect being to give the city seven directors and to leave the other stockholders but six. The court held that, in view of the reserved power to "alter, suspend, and repeal," the act of 1851 and the articles did not make such a contract as the later act might be held to "impair," within the meaning of the federal constitution. These cases were recently affirmed in Locker v. Maynard, 179 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79, where it was held that, under the general reservation to alter or amend, the legislature may, by a subsequent act, provide that stockholders in existing corporations

may cumulate their votes upon any one or more candidates for directors.

In the light of these authorities, it must be held that, although the result of carrying out the alteration provided for in the act of 1902 may be to change, to some extent, the relations of the different security holders to each other, such statute is not obnoxious to the provisions of the constitution forbidding the passage of laws impairing the obligations of contracts.

The motion is denied.