POLK et al. v. MUTUAL RESERVE FUND LIFE ASS'N et al.

(Circuit Court, S. D. New York. January 18, 1905.)

No. 8,155.

**1. INSURANCE—POLICY HOLDERS—RIGHTS—DETERMINATION.**

Rights of policy holders and the insurer must be ascertained and determined in connection with constitution and by-laws of the society, and the certificates of insurance constituting the contract between the parties.

**2. SAME—FEDERAL COURTS—RULES OF DECISION.**

In a suit in the federal courts to determine the rights of policy holders and the insurer, the decisions of the highest courts of the state are of controlling authority.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

137 F.—18

274                    137 FEDERAL REPORTER.

**3. Same—Contract Provisions—Construction—Validity.**
A stipulation in an insurance policy that the place of the contract was agreed to be the home office of the insurer, and that the policy should be governed by, and construed only according to, the laws of New York, was binding on both parties, unless such stipulations or express provisions of the contract impaired the obligations of a contract, or conflicted with the laws of the state where the contract was made.

**4. Same—Reorganization—Effect.**
The act of reincorporating an insurance association in conformity with New York Insurance Law, § 52 (Laws 1892, p. 1955, c. 690, as amended by Laws 1901, p. 1779; c. 722), authorizing such reincorporation, did not operate to create a new corporation, though a different name was assumed, and a new policy of insurance adopted.

**5. Same—Change of Plan—Obligation of Contract.**
Where complainants became members of an insurance association, and received certificates which in terms provided that they should be construed and be subject to the laws of New York, the reorganization of such association and a change of its plan of operations, as authorized by New York Insurance Law, § 52 (Laws 1892, p. 1955, c. 690, as amended by Laws 1901, p. 1779, c. 722), did not constitute an impairment of complainants' contract rights.

**6. Same—Dissolution of Association—Adequate Remedy at Law.**
Members of an assessment insurance association, who become dissatisfied with a change of the plan of operation adopted by the society, having no vested interest in the assets of the corporation, are bound to seek redress at law, and not by a suit in equity to dissolve the association, unless it is shown that the association's affairs are grossly mismanaged.

**7. Same—Insolvency.**
In a suit to dissolve an assessment insurance association, evidence *held* insufficient to establish the association's insolvency.

**8. Same—Pleading—Bill—"Fraudulent Mismanagement."**
The mere use of the words "fraudulent mismanagement," etc., in a bill by dissatisfied members of an insurance association to dissolve the same on that ground unsupported by any averment of specific facts, cannot be considered as an admission of fraudulent mismanagement by a demurrer to the bill.

In Equity.
See 128 Fed. 524.

Russell & Winslow (Wm. Hepburn Russell, Wm. Beverly Winslow, D. L. Snodgrass, Caruthers Ewing, and R. F. Jackson, of counsel), for complainants.

George Burnham (Frank R. Lawrence, Frank H. Platt, George Burnham, and Gordon T. Hughes, of counsel), for respondents.

HAZEL, District Judge. The complainants, 13 in number, citizens of Tennessee, suing in behalf of themselves and of others similarly situated, are dissatisfied members and holders of insurance policies in the respondent Mutual Reserve Fund Life Association, a domestic corporation. The applications for membership therein (except that of complainant Hastings) were made during the years 1886 to 1900. A decree is sought for a dissolution of said association, an accounting, injunction, appointment of receiver, and distribution of corporate assets, with the object of winding up its affairs. Respondents have interposed a demurrer on general and special grounds, viz., want of jurisdiction, in that the statutory amount is not in controversy; that complainants are not entitled

to the relief prayed for; that an adequate remedy exists at law; legal incapacity to sue, the action not being instituted by the Attorney General of the state, nor by a judgment creditor; and that the bill is uncertain, the terms and conditions upon which complainants became members of said association not being set forth.

The Mutual Reserve Fund Life Association (for brevity called the "Association") was incorporated in January, 1881, under chapter 267, p. 264, Laws N. Y. 1875, for the general purpose, as ascertained from the declaration, of securing to its members benefits in a mutual co-operative or assessment life insurance society. In December, 1883, an amended certificate was filed, reincorporating the association under chapter 175, p. 172, Laws N. Y. 1883, for the purpose of transacting life insurance upon the co-operative or assessment plan. Thereafter, on April 17, 1902, the association again reincorporated under chapter 690, p. 1930, Laws N. Y. 1892, and acts amendatory thereof, as the Mutual Reserve Life Insurance Company (for brevity, called the "Company").

The bill broadly alleges that the respondent association has no rights, powers, duties, or legal status other than those conferred by the original and amended certificates of 1881 and 1883; that the reorganization under the Laws of 1892, which authorized the association to transact life insurance without being limited to the assessment plan, was effected by its officers and directors without authority from, and without the knowledge and consent of, complainants or its members and policy holders; that the association is insolvent; that the change of plan of insurance was a scheme on the part of its officers and directors to secretly deprive the complainants of their rights (i. e., to cause a forfeiture of their policies), to perpetrate a fraud on the members and policy holders, and generally a gross mismanagement of its business affairs. Wrongful acts committed by the officers of the association are charged in general terms. The bill further substantially alleges that, after the charter of the association was amended, increased assessments were levied upon its members and policy holders; that the amendment in contravention and violation of section 10, art. 1, of the Constitution of the United States, impairs the obligations of contracts; that the association does not carry out its original purposes; that, by its attempt to transact the business under the certificate of reincorporation, the assets are dissipated, and the members and policy holders deprived of their rights and benefits secured by the charter and by-laws. In addition to the allegations mentioned, the officers are charged with having fraudulently withdrawn from the depository of the association, Central Trust Company, the reserve funds, amounting to $2,287,476.51, and with having wasted the same by improvident management of the business prior to the transfer of the assets of the company. The refusal of the association to accept complainants' tender of their premiums or assessments is also set forth. The bill, in its entirety, insists upon the present corporate existence of the association, and ignores its reincorporation. In brief, an examination of the bill as a whole, aside from the allegations of insolvency, discloses that complainants have not ac-

quiesced in the altered plan of insurance, as provided in the amended charter, and strenuously object to paying premiums or assessments on a basis or plan different from that originally adopted.

Assuming the allegations of the bill well pleaded, which, with the exception of the conclusions of law, are admitted by the demurrer, it becomes essential to determine whether the life insurance plan latterly adopted is lawful. The question presented is important. The court is not, however, without direct precedent for holding that, in the circumstances appearing from the face of the bill, it was within the reserved power of the Legislature to alter and modify the plan for conducting the business for which the association was originally organized. That the rights of the policy holders and the insurer must be ascertained and determined in connection with the constitution and by-laws of the company and the certificates of insurance, which constitute the contract between the parties, will not admit of serious dispute. Matter of Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114; C. H. Venner Co. v. United States Steel Corp. et al. (C. C.) 116 Fed. 1012; Uhlman v. N. Y. Life Ins. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482; Everson v. Equitable Life Assur. Soc., 71 Fed. 570, 18 C. C. A. 251; Hunton v. Equitable Life Assur. Soc. of the U. S. (C. C.) 45 Fed. 661; Cohen v. N. Y. Mutual Life Ins. Co., 50 N. Y. 610, 10 Am. Rep. 522. The decisions of the highest courts of the state upon this question are of controlling authority. Schurz v. Cook, 148 U. S. 397, 13 Sup. Ct. 645, 37 L. Ed. 498. The contract determines the rights and liabilities of the members thereof, and the fact of membership in a mutual insurance corporation does not alter the relations thus created. People ex rel. Meyers v. M. G. & B. Ass'n, 126 N. Y. 615, 27 N. E. 1037. The constitution and by-laws of the association, composing a material part of the contract, are not produced or pleaded. For the purpose of discussing other questions involved in this controversy, their absence will be disregarded. Certain policies of insurance or certificates of membership were filed by complainants with the clerk of the court. Such of the policies as are before the court contain, in substance, the following provision: "In consideration of the application for this certificate of membership or policy of insurance, which is hereby referred to and made a part of this contract, and of each of the statements made therein," the applicant is received as a member, upon condition of the payments to be made, and the further provision that "This contract shall be governed by, subject to, and construed only according to the laws of the State of New York, the place of this contract being expressly agreed to be the home office of said Association in the City of New York." It will be presumed that all of the certificates of membership, except that of Hastings, contain similar provisions.

The policy of Hastings was assigned to the association by another insurance company, but was expressly taken subject to the Constitution and by-laws and of the statutes of this state. The record does not disclose that any of the certificates or policies were issued pursuant to any other understanding. In the circumstances, no

question of inapplicability of the New York laws can arise. Hence the stipulation as to the place of contracts of insurance, and the provisions by which they shall be governed and construed, are controlling on both parties. A different principle applies only where the stipulations of the parties or the express provisions of the contract impair the obligations of a contract, or conflict with the laws of the state where the contract was made. Such is the legal effect of cases recently considered by the Supreme Court of the United States. Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 24 Sup. Ct. 538, 48 L. Ed. 788; Wright v. Minnesota Mutual Life Ins. Co., 193 U. S. 657, 24 Sup. Ct. 549, 48 L. Ed. 832.

Article 8, § 1, of the Constitution of the state of New York, expressly reserves to the Legislature the power to alter, amend, annul, or repeal all general or special laws. This power being reserved to the Legislature by the organic law of the state, it is obviously immaterial that no right of amendment was expressly reserved under chapter 175, p. 172, of the Laws of 1883. Looker v. Maynard, 179 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79; Grobe v. Erie Co. Mutual Ins. Co., 39 App. Div. 183, 57 N. Y. Supp. 290, affirmed 169 N. Y. 613, 62 N. E. 1096; McKee v. Chatauqua Assembly (C. C. A.) 130 Fed. 536. The act of reincorporating the association in conformity with section 52 of the insurance law of New York of 1892 (Laws 1892, p. 1955, c. 690), as amended by chapter 722, p. 1779, Laws 1901, by which a different name was assumed and a new plan of insurance adopted, as heretofore indicated, was not in the ordinary sense a creation of a new corporation. By the general law of New York, any existing domestic insurance corporation was authorized by vote of a majority of its directors to amend its charter, in whole or in part, to conform to the provisions of such law. It is not controverted that the association rigidly complied with the provisions thereof. Nor is the application of section 52 of the insurance law, and supplementary provisions, under which the scope of the association was broadened, and a different plan of insurance adopted, denied. Moreover, neither the statute nor the charter of the association required the consent of the members or policy holders to the proposed change. The complainants became members of the association pursuant to a contract which in terms was controlled by the laws of this state. Presumably, such members had full knowledge of the provisions of the Constitution and laws under which the association was incorporated, and its right to change its plan of operations. Hence there was no impairment of contract rights, which this court, sitting in equity, is bound to protect. This point had been squarely decided by the Court of Appeals in the cases already cited. To the same effect are the adjudications in the Supreme Court of the United States to which attention has been directed.

The next point for consideration is whether the association, now the company, is insolvent, and whether there was such gross mismanagement by the directors and officers that this court should interfere by administering the assets of the association as a trust for the benefit of creditors. Respondents contend for the proposition

that complainants are merely contract creditors, and, not having exhausted their legal remedy, have no standing in a court of equity to sequester the property of their debt in satisfaction of their demands. Upon this point complainants suggest that, inasmuch as the rights of the association and its members are purely reciprocal, there are no creditors except the members, and accordingly the assets may be followed into the possession of the company and distributed pro rata as a trust fund. Whatever view may be taken of the questions relating to the members as contract creditors, their decision is not thought essential to this controversy.

Complainants, in their brief, practically concede that the dissatisfied members and policy holders may treat the contract as rescinded, and recover the premiums and assets paid. At first blush, it would seem indeed a peculiarly anomalous proceeding to invest the officers of a life insurance corporation with power to alter or amend its charter, and thus materially change its plan of operations and conduct of business. When the association started in business on the mutual assessment plan of life insurance, the co-operating members undoubtedly believed that plan would prove economical, convenient, and inexpensive. Undoubtedly the later plan of insurance has increased the premiums or carrying expenses. Nevertheless, as indicated, the insured assumed obligations of membership with a knowledge of the right of the corporation to alter the manner of conducting its business, without, however, changing the nature or character of the same. In this connection, it may be presumed that the officers and directors of the association appreciated that future conditions were liable to arise which manifestly demanded the adoption of a firmer plan of insurance to perpetuate the principal object of its organization. See Iversen v. Minnesota Mutual Ins. Co. (C. C.) 137 Fed. 268. In Swan v. Mutual Reserve Fund Life Association, 155 N. Y. 9, 49 N. E. 258—an action brought by a member against the respondent association—the court, considering the question of enforcing the provisions of a contract of insurance in relation to the reserve fund, said:

"Where, as in this case, the complainant is a member of an association formed for the purpose of transacting the business of life insurance upon the co-operative or assessment plan, he is to be regarded as an integral part of the corporation. His position is similar to that of a corporator in a corporation, and whether such an action as this, in behalf of himself and all others having a like interest in the subject of the action, could be maintained against the corporation of which he is a constituent part, in the absence of other difficulties, is, in my judgment, a very serious question."

Such members, therefore, who continue dissatisfied with the change, having no vested interest in the assets of the corporation, must evidently seek redress at law, unless it be shown that the affairs of the corporation are grossly mismanaged by those charged with the responsibilities of a proper conservation of its assets. In Wright v. Minnesota Mutual Life Ins. Co., supra, the court used this language, which may be appropriately quoted:

"There was no contract that the plan of insurance should never be changed. On the contrary, it was recognized that amendments might be necessary. There was no vested right to a continuation of a plan of insurance which

experience might demonstrate would result disastrously to the company and its members. * * * The courts are slow to interfere with the management of societies such as this mutual insurance company. While the rights of members will be protected against arbitrary action, such organizations will ordinarily be left to their own methods of action and management."

The allegations upon the question of insolvency, owing to the asserted frauds or mismanagement of the affairs of the association, are not entirely harmonious. For illustration, the amended bill, after alleging the insolvency of the association, states:

"In this connection, complainants say that the properties and assets of the respondent association are sufficient to pay off and discharge all accrued claims against respondent association arising out of the deaths of its members holding policies issued by it, and that after the payment of all such accrued claims in force there may remain a sum of money for distribution among these complainants and other members and policy holders of respondent association as their interests may severally appear; but no sum that can be realized, if any such there be, will be sufficient to pay and discharge the debts of said association, and the death claims accrued against it, upon its policies, and repay to the complainants and other members the sums severally invested and paid in by them under their membership obligations."

As respondents have no creditors except policy holders, the allegation of insolvency quoted would seem to imply that the assets should at all times be sufficient to pay all debts, and, in addition thereto, to return to the policy holders the entire amount paid in by them.

Irrespective, however, of mere unsupported assertions of insolvency and inconsistent allegations, respondents' insolvency is predicated upon a financial statement issued by the company in and about April, 1902, and filed in the office of the State Superintendent of Insurance. Such statement, it is claimed by the complainants, gave fictitious values, in that $2,020,048.02, charged as an asset, does not represent any available property, but merely an unauthorized and illegal charge upon the books of the respondents. The amount comprises a charge for "liens allowed not exceeding statutory reserve charged as a liability against each policy, respectively." This item was treated as a credit by the examiner and by the Insurance Department to reduce a liability of $4,057,135.50, which the Superintendent of Insurance at the time of reincorporation of the association charged on the basis of its being "net present value of all outstanding policies in force Dec. 31, 1901, as per certificate of New York Insurance Department." This reduction and method of recapitulation of assets and liabilities of life insurance companies seems authorized by statute. Other specific averments of insolvency are thought to relate to matters of management upon which the judgment of men may differ. Giving due weight to the approval of the Superintendent of Insurance, I am of the opinion that the record sufficiently shows that the respondent company is in possession of sufficient assets and resources to meet its just obligations after paying its debts. This was also the conclusion of Judge Coxe when the question was presented to him for decision. Polk v. Mutual Reserve Fund Life Ass'n (C. C.) 119 Fed. 491. Moreover, respondent company has not abandoned the business for which it was incorporated, but, on the contrary, continues the same.

The allegations of fraud and mismanagement are not supported by any averment of specific facts, except as relied upon by the general theory of the bill. The mere use of the words "fraudulent mismanagement," etc., is not entitled to be considered as an admission of the facts by the demurrer.

The right of the complainants to the relief sought is also challenged on the ground that the action is not brought by the Attorney General of the state, nor by a judgment creditor. This question, however, because of the conclusions reached on the primary questions, need not be decided.

The demurrer is sustained, and accordingly the bill is dismissed, with costs.