Marshall, C. J.
This case involves the construction and application of a portion of Section 3, Article XIII of the Constitution of Ohio as amended September 3, 1912, the pertinent portion being the following: “Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her; except that stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.”
*439 Inasmuch as the bank in this case was organized and all outstanding stock issued subsequent to 1903, and prior to .January 1, 1913, there is involved the further inquiry whether if the amendment is made to apply to the stockholders of that bank, even though the claims are of creditors of the bank after January 1,1913, it would-have retroactive operation, and whether it would impair the obligation of the contract between the bank and its stockholders and therefore transgress the provisions of Section 10, Article I of the Federal Constitution. The pertinent part of the federal constitution is: “No State shall * * * pass any * * * Law impairing the Obligation of Contracts.”
It has been held times without number that a contractual relation exists between a corporation and its stockholders, and it was held in the celebrated case of Trustees of Dartmouth College v. Woodward, 4 Wheat. (17 U. S.), 518, decided by the Supreme Court of the United States in 1819, that a charter granted by a state, granting corporate powers, constitutes a contract between the state and the corporation, the obligations of which cannot be impaired by an alteration, amendment or repeal of such charter without the consent of the corporation, unless the power of amendment or repeal was expressly reserved by the state. For more than one hundred years the doctrine of that case has been accepted and applied and is to-day firmly established as a legal principle. In the concurring opinion of Judge Story in that case there was a suggestion of a reservation of the power of alteration or repeal, and soon after the case was decided many states of the Union began to insert in their constitutions and *440 statutes relating to the organization of corporations provisions for reserve power and control of corporations by making all charters and laws subject to alteration, amendment or repeal. The effectiveness of these provisions in state laws and constitutions has many times been recognized by the supreme court of the United States, notably in the cases of Greenwood v. Union Freight Rd. Co., 105 U. S., 13, and Looker v. Maynard, 179 U. S., 46. From the latter case, at page 52, we quote: “The effect of such a provision, whether contained in an original act of incorporation, or in a constitution or general law subject to which a charter is accepted, is, at the least, to reserve to the legislature the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs.”
These statutes and constitutional provisions have been so universally employed and so uniformly upheld as constitutional and valid, in a large number of cases upon a great variety of questions, that the general proposition is no longer disputed, and yet it must be admitted that the extent of the power is not yet fully settled and that it is constantly giving rise to litigation upon new questions, which fact is evidenced by the case at bar. It was undoubtedly the purpose and the intent of state constitutions and statutes, by such reservations of power, to do away ■with the restraint of that section of the federal con *441 stitution above quoted, as declared in tbe Dartmouth College case. There being therefore no question of power, and there being, no question as to the purpose and intent, it only remains to be seen whether by the constitutional and statutory provisions in the state, of Ohio such purpose has been made effectual. It has already been recently decided by this court, in the case of Lang v. Osborn Bank, 100 Ohio St., 51, that as to any banking corporation which was in existence before 1903, when there was the double liability, and which continued in existence until after 1913, when the double liability again attached, the stockholders would be liable upon all indebtedness incurred since January 1, 1913. It is claimed, however, that a different principle applies to a corporation organized after 1903, where the stock was issued at a time when there was no double liability, and our attention has been seriously challenged by the claim that while by virtue of Section 2, Article XIII, the legislature has the power to make alterations and repeals, that power was not reserved to the people themselves by the exercise of the power of a constitutional amendment.
By the Constitution of 1851, Section 3, Article XIII, clearly establishes double liability upon the stockholders of Ohio private corporations. Shortly thereafter statutes were passed in line with the constitutional provisions, providing the mode and manner of executing the constitutional provision. This condition prevailed until November 23, 1903, when, by further constitutional amendment, the double liability was entirely removed from stockholders of private corporations. Immediately thereafter other statutes were passed conforming to the new condi *442 tion,. and fixing certain limitations upon the rights of creditors already vested under the former laws. This condition prevailed until January 1,1913, when the last amendment to Section 3 went into effect, again creating the double liability against the stockholders of corporations “authorized to receive money on deposit.” It will be seen therefore that the power of alteration and repeal has been reserved not only to the general assembly as to any laws it may enact, but the constitutional framers of 1851 also took the precaution to make definite provision in the constitution itself relative to the liability of stockholders of private corporations. While therefore the general assembly had a wide latitude in the matter of framing general laws for the organization and government of private corporations, the liability of stockholders in such corporations was very largely removed from its control, because of having been definitely cared for in the constitution itself. The people at all times had the power of amendment, including the power of altering and repealing the provisions of the constitution, and while some of the earlier eases in Ohio have held that those provisions were not self-executing, we think the doctrine laid down in the case of Lang v. Osborn Bank, supra, that they are self-executing, is the better doctrine. The distinction sought to be drawn between “general laws” and constitutional provisions does not find favor either upon principle or upon authority. In the earlier constitutions there was an effort to confine constitutional provisions to the fundamentals and .to eliminate provisions which are usually the subject-matter of legislation, and we therefore find that the constitution of the United *443 States contained less than 4,400 words. Many of the more modem state constitutions are said to contain between 50,000 and 60,000 words and to contain a multitude of provisions usually denominated as statutory. Whatever distinction might have existed one hundred years ago has been lost sight of in more recent times. This subject is also discussed in the opinion of Judge Wanamaker in Lang v. Osborn Bank, supra. The same proposition is discussed and decided in Hoffrichter v. State, 102 Ohio St., 65. Attention has been called in argument upon this point to the case of Hawke v. Smith, Secretary of State, 253 U. S., 221. That case has no controlling force, because it merely decided that the word “legislature” as used in the federal constitution did not include the referendum provisions of state constitutions and statutes.
The people of Ohio framed and adopted the constitution and all its amendments and it is by virtue of the provisions of that constitution that the general assembly is given certain lawmaking power. The people who delegated, that power did not make an exclusive grant, as was later demonstrated in 1903, and again in 1912, neither have the people been foreclosed against executing legislative powers otherwise than through the general assembly, which fact was also abundantly demonstrated in 1912. The general assembly is the creature of the constitution, and the powers of the creature cannot under any circumstances rise above those of its creator, the sovereign people who gave it being. The power of an agent cannot be greater than that of the principal. This doctrine has the sanction of Holy Writ: “The servant is not greater than his Lord; neither he that *444 is sent greater than he that sent him.” (John 13:16) When the amendment of 1903 was adopted the same principle which is now claimed by stockholders then applied to creditors of corporations, and yet it wa3 never questioned that creditors whose claims accrued after November 23,1903, had no right to pursue stockholders. By the same reasoning stockholders now have no right to complain of liability attaching to them for indebtedness incurred after January 1, 1913. The principle contended for by counsel for defendants in error would immediately create two classes of corporations, those organized between 1903 and 1913, and those organized before and after that period. This would be conducive to the greatest confusion and would destroy the uniform operation of laws applicable to private corporations.
In the last analysis there is no reason why greater responsibility should attach to stockholders after January 1, 1913. All such liability can be avoided by greater exercise of care and greater conservatism in the dealing of private banking corporations. Although it has not been argued, and it is therefore not necessary to decide, the constitutional amendment of 1912 might very well be upheld as a proper exercise of police power. Depositors in private banking corporations are seeking no profit from the corporation and are therefore in a very different situation from those persons who contract upon a speculative basis with other corporations. Experience has demonstrated the necessity of throwing greater safeguards around the administration of private banking corporations, and this amendment is a salutary provision designed to cause the officials of private banking corporations to be conservative in their business ventures.
*445 We are not, however, left entirely to a discussion of this matter upon principle. A parallel to the situation in Ohio is found in the state of New York. Under the articles of association of a corporation formed in that state in 1844 under the general banking act of 1838, it was provided that the shareholders should not be individually liable for any contract of the association. In 1846, by constitutional enactment, stockholders of banks were subjected to personal liability, including corporations then existing as well as those afterwards created. The general banking laws of 1838 reserved the power of alteration and repeal and it was held in the case of In re Oliver Lee & Co’s. Bank, 21 N. Y., 1, that the alteration might be thus made.
This contention of counsel turns entirely upon the proper construction of Section 2, Article XIII of the Constitution, the pertinent portions being as follows: “Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed.” The contention of counsel that the reference to “general laws” applies only to acts of the legislature and that therefore only the legislature can alter or repeal them, is not justified by the language quoted. The construction claimed by counsel would be correct only if to the words quoted the constitutional framers had added the words “by the general assembly.” No limitations whatever are placed upon the manner of their alteration or repeal, neither is it stated that they may not be repealed by constitutional amendment. The contention of counsel that constitutional enactments are not laws would defeat their argument altogether, because the federal constitution only provides that “laws” may not be passed by the states impairing *446 the obligation of contracts. If. constitutional provisions are not laws, then the provisions of the federal constitution would not be violated by provisions in state constitutions. The contrary of this has been held, however, in the case of Dodge v. Woolsey, 59 U. S. (18 How.), 331, where certain provisions of the Ohio Constitution of 1851 were brought in question. Counsel have also earnestly argued that the decisions of the lower courts should be reversed upon the authority of Ireland v. Palestine, B., N. P., & N. W. Turnpike Co., 19 Ohio St., 369. An examination of that case, however, discloses that it did not involve a discussion of Section 2, Article XIII, as above quoted, and it further clearly appears that the corporation in that case was organized before the adoption of the Constitution of Í851. We find no error in the judgments of the lower courts and the judgment of the court of appeals will therefore be affirmed.

Judgment affirmed.

Johnson, Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.