(19 App. Div. 79.)

FARMERS' LOAN & TRUST CO. v. ABERLE et al.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

1. MUTUAL INSURANCE COMPANY—INSOLVENCY—TRUST FUND.
    A reserved fund of a mutual insurance company, held in trust for division on the dissolution of the company among its then members, is for the benefit of the living members at the time of such dissolution.

2. SAME—RIGHTS OF RECEIVERS.
    On a dissolution of a mutual insurance company, and the appointment of a receiver of its property, the trustee of a trust fund created for the benefit of certain members should pay the sum over to the receiver, with all the accumulations, with interest, after making such deduction as they are entitled to make pursuant to their contract.

Appeal from special term.

Action by the Farmers' Loan & Trust Company, as trustee, against Daniel Aberle and others, to obtain a determination as to who are entitled to the trust fund, held by plaintiff, and for direction as to the distribution thereof. From a judgment (41 N. Y. Supp. 638), defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, INGRAHAM, and PARKER, JJ.

Henry W. Sackett, for appellant receiver.
Arthur S. Luria, for appellant Bliss.
Robert Gibson, Jr., for appellants Mills and others.
Raphael J. Moses, for appellant death claimants.
F. W. Steele, for defendant Mackaye.
David McClure, for plaintiff respondent.
Edmund Luis Mooney, for defendant respondents.
Hector M. Hitchings, in pro. per. and for other respondents.
Henry D. Hotchkiss, for respondents Allen and others.

RUMSEY, J. The first question to be determined is whether so much of the judgment as prescribes that the funds in the hands of the plaintiff should be distributed among the members of the association who are entitled to participate in the reserve fund is correct, or whether that fund should be mingled with the mortuary fund, and all the death claimants allowed to share in it. The re-

serve fund of the association is established by the by-laws, which in that regard read as follows:

"From each assessment received by the association twenty per cent. (20%) shall be set aside, and constitute a reserve fund, which shall be deposited with a trust company, and to be securely invested in United States bonds, bond and mortgage, or other interest-bearing securities, by said trust company as trustee, for the exclusive benefit of the members of the association. The reserve fund above one hundred thousand dollars ($100,000) may be applied to the payment of claims in excess of the American Experience Table of Mortality, and when, under such circumstances, any claim by death is due, to the making up of any deficiency that may then exist in the mortuary fund. Should none of these contingencies arise, this association being purely mutual, at the expiration of a period of ten (10) years, and each year thereafter during the continuance of this certificate, a division of the reserve fund, together with its accumulated interest, will be made, and an equitable proportion thereof will be credited to each certificate in force upon the books of the association, and be applied to the payment of future assessments and dues under such said certificate."

These provisions of the by-laws are substantially repeated in the certificate issued to each member who is entitled to share in the reserve fund.

It has been held in several cases that, under by-laws substantially like these in other associations, the reserve fund was not an "asset" of the company, within the general meaning of the term, but was more in the nature of a trust fund, set apart for a particular purpose, for the benefit of those members who were entitled to it, and that the death claimants generally were not entitled to receive any portion of it, but it was to be distributed among those who, by the provisions of their policies, were entitled to share in it. In re Equitable Reserve Fund Life Ass'n of New York, 131 N. Y. 354, 30 N. E. 114; People v. Life Union, 83 Hun, 598, 31 N. Y. Supp. 1120. The same principle must be applied in this case, and must control the distribution of this reserve fund, unless it shall appear from the record that in some way its destination has been changed, and other persons have become entitled to share in it. This is claimed to have taken place by the action of the association in amending the by-laws so as to authorize the directors to use the reserve fund to the payment of any death claim, whenever, in their discretion, it would be for the best interest of the association to do so. An amendment to that effect of the by-laws was proposed at the annual meeting which was held on the 14th day of March, 1894, and it is claimed that that amendment was then adopted. It is also claimed that, having been adopted, it had the effect to take away the right of those persons who before that had been entitled to share in the reserve fund, and to make that fund a portion of the general assets of the corporation, applicable to the payment of death claims, and to any other claims which were liabilities of the association. It was prescribed by the by-laws of the association that the contract between the association and each member should be deemed to include, as an integral part, the laws of the state of New York pursuant to which the association was incorporated, the certificate or certificates of incorporation, the by-laws and all amendments thereto, rules and regulations of the association in force at the date of the certificate. As it appears that no certificates were

issued after the 14th of March, 1894, the time when this by-law was amended, as is alleged, it may with some force be insisted that by the terms of the contract itself, in accordance with which the by-laws and regulations in force at the date of the certificate are made part of the contract, this amendment, which was subsequent to the date of the certificates, should not be permitted to have the effect of taking away the right which holders of certificates at that time had in the reserve fund.

But, passing that suggestion, which is not insisted upon by counsel, and assuming, for the purposes of this argument, that there was present at the meeting on the 14th day of March, 1894, a sufficient quorum to pass a by-law pursuant to the provisions of section 216 of the insurance law, it remains to be considered whether such a change in the by-law would be operative to devest the rights which the holders of certificates had acquired in the reserve fund before the by-law had been amended. It is claimed on the part of the appellants that there was reserved to the association the right to amend its by-laws, and, consequently, each member of the association is bound by any amendment made after he receives his certificate, although the effect of it may be to devest rights which have vested in him by virtue of the certificate. It is unnecessary to discuss at length the effect of an amendment of the by-laws to devest rights which have already become vested pursuant to a contract between the association and its members. It must be deemed now to be established that, even though the right is reserved to the association to amend and change its by-laws, and although the by-laws are said to form part of the contract between the association and its members, yet that there is no power in the association so to amend its by-laws as to devest rights which have vested, however broad may be its power as to mere matters of administration. Kent v. Mining Co., 78 N. Y. 159; Engelhardt v. Loan Ass'n, 148 N. Y. 281, 42 N. E. 710; Weiler v. Aid Union, 92 Hun, 277, 36 N. Y. Supp. 734. Within the rules laid down by these cases it must be held that no amendment to the by-laws of an association of this character can be made operative to devest rights which have already vested in the members.

But the appellants claim that the death claimants are entitled to share in this fund by virtue of the sixth clause of the first contract between the plaintiff and the Mutual Benefit Life Association and the tenth clause of the second contract. Even if we should conclude that the latter of these clauses was not invalid, as adjudged, yet we are quite clear that neither of them can in any way affect the rights which those certificates give to their holder. The members are not parties to the contract between the plaintiff and the association. They have had no notice, so far as appears, of the making of any such contract. They are not in any way in privity with it, and we are not aware of any principle which would authorize a corporation to make a contract with a third party the effect of which would be to take from the stockholders of the corporation property which they are entitled to have, and to turn it over to the corporation through whose contract they became en-

titled to it. Whatever may be the duty of the plaintiff towards this corporation, arising out of the fact that it has inserted in its contract the provisions in question, those provisions clearly can have no effect to take away the rights of the members and give them to the association itself.

It is claimed that the distribution of the reserve fund among the living members is forbidden by the law of the state, and for that reason that the fund already created should go into the general assets of the corporation. Even were the law to be construed as making illegal the creation of a reserve fund, it would not necessarily follow that such a fund should be diverted from the purpose for which it was created, and paid into the mortuary fund, of which it was no part. But we do not think that the creation of a reserve fund, for purposes for which this one was created, is illegal. By chapter 975 of the Laws of 1883, which authorized the creation of corporations of this kind, they were expressly permitted to create a reserve fund, to be used in the payment of assessments or death losses, or for benefits in the case of physical disability only. No limitation of any kind was put upon the right to create this fund until 1887, when the law was modified by directing that nothing in the act should prevent any corporation from paying out of its reserve fund, to its members, such ratable cash dividends, or from crediting on assessments such ratable sums, as they are now or may hereafter become entitled to by the terms of their existing contracts, provided that such corporation shall have first deposited the sum of $100,000 with the insurance department of the state, and the superintendent has certified to that effect. This amendment was the sixth section of chapter 285 of the Laws of 1887. It did not purport to declare invalid the reserve fund which had before then been created, or to forbid absolutely the continuance of such a fund, but it simply required the deposit of $100,000 in the insurance department before any of the fund could be paid out. As no payment was attempted to be made of this fund while that amendment was in force, it does not apply here. By section 214 of the insurance law the right to credit the reserve fund upon assessments was given without a deposit, which was only required when it should be proposed to make a contract to pay a fixed sum in cash to a living holder of a certificate. None of these provisions apply to the case at bar.

It is said, however, that all that portion of the reserve fund in excess of $100,000 ought to be applied to the payment of death claims, because at various times resolutions were adopted by the board of directors that the surplus above that sum should be transferred to the mortuary fund, and devoted to the payment of death claims. It seems, from the record, that all resolutions passed, authorizing the transfer of money from the reserve fund to pay death losses, before October 22, 1891, had been complied with, and the money provided for by those resolutions actually paid out. The resolution of October 22, 1891, required the transfer of $8,234.44 to the credit of the association, from the reserve fund to the mortuary account. That sum was never transferred, but still remains in the reserve fund;

and it is claimed that, as the transfer was authorized, it should now be directed to be made. But we do not think that any such transfer as was contemplated by the resolution of October 22d was authorized. The reserve fund could only be infringed upon for the payment of claims in excess of the American Experience Table of Mortality, and when, under such circumstances, any claim by death was due, to the making up of any deficiency that might then exist in the mortuary fund. There was no power to deplete the fund for any other purpose than to make up such deficiency; but the resolution of October 22d does not purpose to transfer the fund for any such purpose, or to devote it, when transferred, to the payment of any deficiency. It simply provides for the absolute transfer to the mortuary account of the sum mentioned in it. We do not think that the association had power to make any such absolute transfer. It could only be done for the special purpose mentioned above; that is, to make up a particular deficiency in a death claim which had accrued in excess of the American Experience Table of Mortality. For that purpose, and so far as that was necessary, the transfer might be made, but beyond that there was no power in the association to do it. As it was not made by this resolution for any such reason, we do not think the resolution was sufficient to authorize the transfer of the money or to require that it should now be made.

No other reasons are suggested why this case should be taken out of the rule laid down in Re Equitable Reserve Fund Life Association, and Weiler v. Aid Union, supra; and we think the principle established in those cases must apply, and the fund must be distributed in accordance with the judgment entered upon the decision of the special term.

The next and only other question which it is necessary to decide is whether the judgment was correct in directing that this distribution should be made by the plaintiff, or whether the proper person to make it is the receiver. Ordinarily the receiver of an insolvent corporation represents the corporation. He is the trustee of and represents the creditors and all other persons interested in the fund, including the policy holders. He stands in the place of the corporation, placed there by the court to preserve its assets, and to do with them as he may be directed. Mason v. Henry, 152 N. Y. 530, 46 N. E. 837. In the absence of a superior right in any other person, it would be quite clear that this fund, with all other funds of the corporation, should be turned over to the receiver, to be by him distributed to those persons who are entitled to share in it. The right of members to share in this reserve fund arises out of their contract with the association. The fund is created by the association, out of the assessments, in pursuance of that contract, and, in the absence of any contract with anybody else, the members who are entitled to share in this fund can only look to the association for their proportion of it. They have no privity with any other person, and no right to proceed against any other person, except as they may acquire such a right through their contract with the association pursuant to some agreement between the associa-

tion and some other person. The plaintiff here does not become the trustee of the policy holders of this association simply because of the fact that it has in its possession a portion of the funds, because it has those funds only by a contract with the association, and whatever power it has, or whatever responsibility it has assumed, grows out of the contract which it has made; and if there is not within the four corners of its contract some power to distribute this fund, or some duty imposed upon it in that direction which should make it liable to the holders of the fund for a proper distribution of it, there is no reason why such a distribution should be devolved upon it.

In the case of In re Home Provident Safety Fund Ass'n, 129 N. Y. 288, 29 N. E. 323, it was held that this plaintiff, having taken a portion of the funds of that association pursuant to a contract with the association, had assumed the duty of distributing the fund upon the dissolution of the association. But its duty to distribute the fund in that case was said to arise purely out of the contract by virtue of which the fund had been put into its hands. That contract provided that, in case of the failure on the part of the insurance company to perform its obligations, entered into with its members who held certificates, the trust company was to convert the securities into money, and to divide the same in accordance with the agreement contained in the certificates, and which was recited in the contract between the insurance company and the trust company. The court held that, because of the agreement to make this division, entered into by the trust company, the right to make it had accrued to the company, and that it could not be relieved of the possession of the fund until it had performed its contract, which was at once the measure of its liability and the guide for the discharge of its duties. The principle which lay at the foundation of that case was that the trust company was bound by the contract which it had made, and that, as that contract imposed upon it the duty of distributing the fund to the policy holders, it was the proper person to make such distribution. Whether that case is controlling here depends solely upon the terms of the contract which has been made between the trust company and the Mutual Benefit Life Association.

It is not a matter of any importance, of course, whether the trust company shall or shall not have been called a trustee in the agreement which it has made. Its rights and its duties are not to be measured by the name which it has given itself, but solely by the duties which it has undertaken, and the powers which have been given to it in the contract under which it holds this money. It is evident, from an examination of each of the contracts, that the duty of the trust company with regard to the reserve fund was, in the first place, to receive it, and to invest it in such way as should be directed by the board of directors of the association, approved by the president of the trust company. The securities were to be taken in the name of the association, from which it is to be inferred that they were to be the property of the association, that they were held by the trust company as custodian, and that it was not in-

tended that it should have the legal title. They were only to be sold upon the written order of the president of the association, accompanied by a certified copy of the resolution of the directors authorizing the sale. All the interest received was to be invested in the same way. The trust company agreed to make any transfer of the reserve fund upon receipt of a certified copy of the resolution of the directors referring to the by-law authorizing such transfer. It was further agreed that, if the board of directors of the association should deem it expedient to order a transfer of the whole or any portion of the reserve fund to any insurance department or official of any state or country as security for doing business in such state or country, or to any other trust company, organized under the laws of the state of New York, such transfer should be made by the plaintiff pursuant to the vote. This duty was, however, limited to some extent; but, even as limited, it must be deemed to recognize the ownership of the association in this money, and that it might be the duty of the plaintiff to transfer all or a portion of it to some other trust company, if it were called upon to do so, and the proper agreement was made with that company.

This provision, of itself, is fatal to the claim of the plaintiff that it was required by its contract to distribute this fund. By the ninth provision of the last agreement it was provided that the trust company should be allowed reasonable compensation for making investments of the reserve fund, for collecting interest on it, for realizing on any of the securities of the fund, and for any authorized expenses of litigation arising out of the contract without its fault. It is quite noticeable that this clause of the contract does not provide any compensation for the distribution of this fund by the trust company, although it does provide for payment for the performance of every duty which, under the contract, it agreed to perform. The omission to provide a way to pay for distributing the fund is quite significant. Thus far in the contract there is not only no provision by the terms of which the trust company is called upon to distribute this fund, but there is no provision whatever from which it could be inferred that it had any duty towards the fund except that which it assumed to the association by virtue of the contract. Up to this time there is no provision in the contract for the distribution of the fund. The only provision upon that subject is the one inserted in the sixth clause of the first contract and the tenth clause of the second contract. The tenth clause of the second contract directs that, in case of the dissolution of the association, the entire reserve fund, less the necessary and reasonable expenses of the trust company, shall, after paying any and all death losses or other indebtedness for which the association is then liable, be divided among the then members of the association, proportionably to the gross amounts of assessments paid by said members, respectively, to said association, or shall be distributed in such other equitable manner as the court shall direct. The sixth clause of the first contract contains, also, a direction for the distribution of the fund among the then members of the association.

If any duty is imposed upon the trustee to distribute this fund, that

duty arises from these clauses of the contract. But there is nothing in the contracts, or either of them, which puts upon the plaintiff the duty of making this distribution, or even of superintending it. By the tenth clause the distribution provided for is not such as the members of the association are entitled to have, pursuant to the terms of their certificates. The plaintiff, whose power and whose liability arise from this contract, and which has no right or duty to distribute, except as it gets it from the contract, has agreed to distribute the fund in a way in which the association itself has no right to distribute it, and has, by its contract, made itself a party to the scheme on the part of the directors of this association to take away from those who are entitled to share in the reserve fund the right which they had to receive it. That particular portion of the contract has been declared illegal and void, and all parties have acquiesced in that portion of the judgment. We have, therefore, this condition of affairs: This plaintiff, having made with the association a contract which it concedes is illegal, and having no right to distribute this fund except by virtue of that illegal contract, comes into court insisting that it shall be permitted to distribute the fund in a way not provided by its contract, and so as to take it from those persons who, by its contract, are entitled to share in it, and pay it to other persons, whom it does not recognize in its contract as having any rights to the fund at all. If this clause of the contract had not been inserted in it, no one would claim that the plaintiff had either the right or the duty of distributing this fund. With this clause in the contract the plaintiff can only distribute this fund to persons who would have no right to it. How the striking of that clause out of the contract, and the awarding of the money to those who are entitled to it, but to whom the plaintiff has no right to pay it over by its agreement, can give to the plaintiff the right to distribute it, we are unable to see. In the case cited from 129 N. Y. 288, 29 N. E. 323, the trust company was held a proper person to make the distribution, because it had a valid contract to make the distribution to persons who, by the agreement with the insurance company, were entitled to receive the money, and had expressly agreed to do so. If it is to be held entitled to distribute this fund, it must be in spite of its contract. But there is no claim of any right on the part of the plaintiff to make distribution, except such as it acquires under the tenth clause; and how, under the tenth clause, by which it is bound, if that clause has any force at all, this company has the right to make a distribution of the property different from that prescribed by that clause, we are not told.

For these reasons, we are brought to the conclusion that, when the tenth clause of this agreement was held to be invalid, and it was determined that the reserve fund was to be distributed to other persons than those to whom it was given by that clause, the right of the plaintiff to distribute, if it had any, was taken away, and the money should be paid over to the receiver, to dispose of it according to the contract between the association and its policy holders, as construed in the judgment. The receiver is the only person who has the information which would enable him to make this distri-

bution.   If the distribution was to be made by the plaintiff, it must get from the receiver all the data which will enable it to act.   No inconvenience, therefore, can result from requiring the receiver to make this distribution.

The judgment appealed from should be amended, so far as that the plaintiff should be compelled to pay over to the receiver the reserve fund and all its accumulations, with interest, after making such deductions as it is entitled to make pursuant to its contract, and directing the receiver, upon receipt of the money, to distribute it according to the directions contained in the judgment; and, as thus modified, the judgment should be affirmed.   No costs.   All concur.