LYMAN v. STATE BANK OF RANDOLPH et al.

(Supreme Court, Appellate Division, Fourth Department.   March 10, 1903.)

1. BANKS—INDEBTEDNESS OF STOCKHOLDER—LIEN ON STOCK.
    Where the articles of association of a bank provide that no shares shall
    be transferable on which any call for installment of capital or any in-
    terest on such installment shall remain unpaid, or "in" which any share-
    holder is indebted to the bank, unless the directors consent thereto, no
    shareholder who has failed to respond to a call, or who is indebted to
    the bank as drawer or indorser, or as security for any sum due the bank,
    can transfer his stock without permission, and the bank has a lien on the
    stock.

2. SAME—BONA FIDE PURCHASER—PLEDGE OF STOCK.
    Where the articles of association of a bank give it a lien on stock of
    one indebted to the bank, and the cashier of the bank, who is indebted
    to it on a note, pledges his stock with a stockholder of the bank to secure
    a debt, and there is nothing on the face of the stock certificate indicating
    the existence of the provision creating the lien, and the pledgee has no
    knowledge of the facts, the pledgee is a bona fide holder, with a lien
    superior to that of the bank.

Appeal from judgment on report of referee.

Action by Joel H. Lyman against the State Bank of Randolph and
another. From a judgment for plaintiff, defendant bank appeals.
Affirmed.

There is no controversy respecting the facts of this case, as nearly all of
them are covered by the stipulation of the attorneys for the respective par-
ties. Such as are especially important and material to the questions to be
hereafter considered may be thus briefly stated:

On the 9th day of February, 1886, the defendant Adams, who was then
a director and the cashier of his codefendant, the State Bank of Randolph,
borrowed of the plaintiff's wife, Caroline E. Lyman, the sum of $2,500, for
which he gave her his individual note, payable in one year after date, with
interest thereon payable semiannually; and as collateral security for the pay-
ment of such note he delivered to 'her certificate No. 72 of the capital stock
of the defendant bank, which certificate represented 30 shares, of the par
value of $100 each. On the 18th day of July, 1889, Mrs. Lyman transferred
the note and certificate to the plaintiff, who held the latter as a pledge for
the former until November 7, 1898, when Adams, by a formal assignment of
the same, transferred it to him; and on the 2d day of July, 1892, the
plaintiff was elected a director of the bank, which position he continued
to occupy down to the time of the trial of this action. The note not being
paid, the plaintiff caused the same to be put into judgment, and on the
14th day of August, 1900, he duly presented his certificate, and demanded a
transfer of the stock represented thereby upon the books of the bank, which
the directors of the bank refused to do until the existing liabilities of Adams
to the bank were paid. On the 9th day of February, 1886, when the loan
was made to Adams by Mrs. Lyman, the former was liable to the bank, di-
rectly and indirectly, in the sum of nearly $16,000, of which sum he was
liable as principal debtor, either alone or with others, in the sum of about
$9,000. $1,500 of which indebtedness was unpaid on the 14th day of August,
1900, the day upon which the plaintiff demanded a transfer of the stock in
question upon the books of the bank; and the same still remains unpaid.
This $1,500 indebtedness originally consisted of two notes—one of $300, given
on the 25th day of September, 1885, and one of $1,200, given upon the 25th
day of June of that same year—and upon each of these notes the names of
the defendant Adams and one D. C. Adams, his son, alone appear. Subse-
quently these two notes, with others, were incorporated into a new note of

¶ 1. See Banks and Banking, vol. 6, Cent. Dig. §§ 50, 56, 58.

$5,000, which was given by Adams to the order of and indorsed by one T. E. Adams, who, it is conceded, is responsible for more than the amount thereof. The defendant bank was duly organized in the year 1874, and on the 27th day of June of that year its certificate of incorporation and articles of association were duly recorded in the clerk's office of Cattaraugus county, and thereafter, and on the 17th day of November following, the superintendent of the banking department issued to it a certificate to the effect that it was authorized to do business "in accordance with its certificate of organization and articles of association and the banking laws of this state."

Argued before ADAMS, P. J., and McLENNAN, WILLIAMS, HISCOCK, and NASH, JJ.

Alexander Wentworth and W. S. Thrasher, for appellant.

Frank W. Stevens, for respondent..

ADAMS, P. J. The ninth article of association referred to in the foregoing statement reads as follows, viz.:

"Article IX.

"Section 1. The Board of Directors shall cause suitable books to be kept for the registry and transfer of the shares of capital stock of the association, and in which the names of its shareholders shall be recorded, and any transfer, to be valid, shall be made on the books of the association, and shall be signed by the shareholder or his authorized attorney.

"Sec. 2. Any transfer of shares of said capital stock shall be made and taken expressly subject to all the conditions and stipulations contained in these articles, and shall be executed and authenticated in such manner as the Board of Directors shall from time to time prescribe.

"Sec. 3. *　*　*　*　*　*　*　*　*　*　*　*

"Sec. 4. No shares shall be transferable on which any call for installment of capital, or any interest on such installment, shall remain unpaid, or in which any shareholder is indebted to the bank, either as drawer or endorser, or as security for any payment due the Bank—unless the majority of the Board of Directors consent thereto."

And the learned referee before whom the case was tried ·held that under the provisions of the fourth section of this article a lien was created in favor of the defendant bank upon the stock held by the plaintiff for the indebtedness of Charles P. Adams to the bank, but that such lien was subordinate to the plaintiff's right to or lien upon the same stock, by virtue of his being a bona fide holder of the same for value.

In reviewing the conclusion thus reached by the learned referee, it will be readily seen that two subjects present themselves for our consideration, viz., the meaning and effect of section 4 of the bank's ninth article of association, and the nature and quality of the plaintiff's title to the stock in question. It is the contention of the learned counsel for the plaintiff, supported by an extended and elaborate argument, that within both legal and grammatical rules of construction section 4 of this article is not sufficiently inclusive to cover the indebtedness of the defendant Adams, and that, consequently, the bank had no lien whatever upon the stock assigned by him. Unquestionably, the section in question is expressed in language which, to say the least, is somewhat infelicitous, and at first glance the actual meaning thereof seems a trifle obscure; but when construed in the light of a custom so universal among banks that courts may almost consider themselves justified in taking judicial notice thereof,

its real meaning becomes more apparent, and therefore, without going into any lengthy and subtle analysis of the subject, we deem it sufficient to say that we construe the section to mean that no shareholder who has failed to respond to any call for an installment of capital, or any interest upon such installment, or who is indebted to the bank, either as drawer or indorser, or as security for any payments due the bank, shall be permitted to transfer stock held by him unless a majority of the board of directors consent thereto. This construction gives to all the language of the section an intelligible, reasonable, and common-sense meaning, and one which is in accord with the custom to which we have adverted, while any other would, in our opinion, render the latter part of the section almost meaningless, for it is inconceivable that a stockholder would be indebted to his bank as "drawer or indorser" "in" the stock held by him.

In this view of the case it necessarily follows that the learned referee was correct in his conclusion that the provision of article 9 created a lien in favor of the bank upon stock held by Adams to the extent of any indebtedness owing by him to the bank; and, as it is conceded that at the time of his assignment to the plaintiff's wife of 30 shares of his stock he was liable to the bank as maker or drawer of two promissory notes amounting in the aggregate to $1,500, which were at that time unpaid, it would seem that the shares specified in certificate No. 72 were then subject to a lien for that amount, provided the circumstances of the transfer were not such as to give to the transferee a superior lien; and thus we are brought to a consideration of the more troublesome question in the case. As we have seen, the stock certainly was subject to the lien of the bank so long as it remained in the possession of Adams. Of this there can be no question. But it is further insisted that the stock, having become impressed with the indebtedness due from Adams to the bank, retained that characteristic even in the hands of an innocent transferee; or, in other words, that Mrs. Lyman took it like any ordinary chose in action, subject to all equities and defenses existing between the original parties. The difficulty with this contention, however, arises from the fact that bank stock is not an ordinary chose in action. In a case recently decided by this court it was said:

"That bank stock certificates, while not possessing all the characteristics of commercial paper, are nevertheless esteemed by the business world as having a value somewhat superior to ordinary securities; [that] for this reason they have come to be regarded as one of the most desirable bases of commercial transactions, and, when transferred to a purchaser for value, and without notice of any defect in title, the certificate is of itself generally an assurance to the transferee that upon its presentation the holder will be entitled to have the stock transferred to him upon the books of the bank." Buffalo German Ins. Co. v. Third Nat. Bk., 29 App. Div. 137-141, 51 N. Y. Supp. 667, 670.

The case from which the foregoing language is quoted was subsequently reversed by the Court of Appeals, it is true (162 N. Y. 163, 56 N. E. 521, 48 L. R. A. 107), but the reversal, so far from criticising such language, apparently recognized it as a correct statement of the rule now existing in this state and country; as, indeed, must be the case, for it is but little more than a paraphrase of language employed at different times and by various tribunals to express the same

idea. Bank v. Lanier, 11 Wall. 369, 20 L. Ed. 172; McNeil v. Tenth Nat. Bank, 46 N. Y. 325, 7 Am. Rep. 341; Leitch v. Wells, 48 N. Y. 613; Driscoll v. West Bradley Co., 59 N. Y. 96; Knox v. Eden Musee Co., 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700; Wallach v. Schulze, 22 App. Div. 57, 47 N. Y. Supp. 936.

Our attention is directed by the learned counsel for the appellant to a number of decisions of equal weight with those above cited, and which it is claimed are authority for a different rule from the one we have indicated a disposition to adopt, of which the most notable are Mohawk Nat. Bk. v. Schenectady Bk., 78 Hun, 90, 28 N. Y. Supp. 1100, affirmed in 151 N. Y. 665, 46 N. E. 1149; Gibbs v. Long Island Nat. Bk., 83 Hun, 92, 31 N. Y. Supp. 406, affirmed in 151 N. Y. 657, 46 N. E. 1147. In the first of these cases it was stated in the prevailing opinion at General Term that, inasmuch as the stock in question was but a nonnegotiable chose in action, the assignee thereof took the same subject to all the equities existing against it in the hands of the assignor; but, as it was made to appear that the plaintiff was not a bona fide holder for value of such stock, this statement was unnecessary to the decision of the case; and, as the Court of Appeals saw fit to affirm the judgment therein without an opinion, it cannot be assumed that it adopted all the dicta of the court below. In the second of the above-mentioned cases the decision of the general term was placed upon the express ground that the assignee of the stock there involved took the same with notice of the bank's lien; and it is impossible to read the opinion of the court without reaching the conclusion that, but for this fact, the assignee's lien would have been held good as against that of the bank; and, as the judgment was affirmed by the Court of Appeals upon the opinion of the General Term, it certainly cannot be said that this decision is authority for any principle contrary to the one invoked by the respondent in the case now under review. We conclude, therefore, that, while it may not be asserted that certificates of bank stock are negotiable in the same sense and to the same extent as commercial paper, it may be said in the language of one of the cases heretofore cited that "the current of authority in this state is to the protection of a bona fide vendee against secret or equitable claims thereto by one who has indued the vendor with the indicia of ownership." Driscoll v. West Bradley Co., 59 N. Y. 105.

With the rule thus understood, it remains only to determine its application to the facts of this case; and our first observation is that beyond all question the stock specified in certificate No. 72 was assigned as collateral to a loan made concurrently with, and upon the faith of, such assignment. Moreover, it was made, as the referee found, upon evidence which fully sustains his finding, without any actual knowledge upon the part of either Mr. or Mrs. Lyman of the existence of article 9, or of any existing lien or equity in favor of the bank; so that to this extent, at least, the plaintiff may be said to be a bona fide transferee for value; and the only question, therefore, which remains to be considered is whether the circumstances attending the transfer of the certificate to Mrs. Lyman were such as to put her upon

inquiry as to the rights of the bank. It is true that at this time Mrs. Lyman owned stock other than that transferred by Adams; but that circumstance of itself is of no particular significance, for, as we shall see later on, it furnished her no information concerning the provisions of article 9, and it is not claimed that she obtained any such information from Adams at the time the transfer was made. On the contrary, it is conceded that as between them the entire transaction was conducted in perfect good faith. But the claim is, as we understand it, that, notwithstanding Adams was the cashier of the bank, and consequently the person of all others in whom Mrs. Lyman had a right to repose confidence, and from whom she might have expected to learn of the bank's claim, if it had any, she was in some way bound to know of the existence of article 9, and of its inhibitory provisions. Precisely how such information can be said to have been brought to her notice does not fully appear. It certainly could not have been gained from the certificate itself, for it contained no reference to the bank's articles of association, nor was there anything upon its face to indicate that the right to sell or assign the same was subject to any restriction or limitation whatever. On the contrary, it apparently conferred upon the holder an unconditional power of disposition, and in this respect it was quite different from the certificate in Gibbs v. Long Island Bank, supra, which bore upon its face the statement that it was "subject to the conditions and stipulations contained in the articles of association above mentioned." We conclude, therefore, that, in view of the elements of negotiability which this stock possessed, the omission upon the part of the bank to express, in some manner, its contingent right to or interest therein was virtually an assurance to a purchaser that the owner had full power and an unrestricted right to dispose of the same; and, if such be the case, it would seem to follow that, aside from any question of negotiability, the bank, under the undisputed facts contained in the record before us, is now estopped from asserting its claim as against the superior lien of the plaintiff.

This view is in harmony with well settled principles and is supported by abundant authority. In McNeil v. Tenth National Bank, supra, the rule now invoked was applied to a state of facts somewhat analogous to those here present, in the following language:

"But if the owner intrusts to another not merely the possession of the property, but also written evidence, over his own signature, of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used, either at the pleasure of the depositary or under contingencies to arise. If the conditions upon which this apparent right of control is to be exercised are not expressed on the face of the instrument, but remain in confidence between the owner and the depositary, the case cannot be distinguished in principle from that of an agent who receives secret instructions qualifying or restricting an apparently absolute power."

Again, in Moore v. Metropolitan National Bank, 55 N. Y. 41, 14 Am. Rep. 173, it was said that:

"A bona fide purchaser for value of a nonnegotiable chose in action from one upon whom the owner has by assignment conferred the apparent absolute ownership, when the purchase is made upon the faith of such apparent ownership, obtains a valid title as against the real owner, who is estopped from asserting a title in hostility thereto."

And the doctrine of that case was even more emphatically asserted in Holbrook v. N. J. Zinc Co., 57 N. Y. 616, in which the Court of Appeals declared that:

"It cannot now be denied that if a corporation having power to issue stock certificates does in fact issue such a certificate, in which it affirms that a designated person is entitled to a certain number of shares of stock, it thereby holds out to the persons who may deal in good faith with the person named in the certificate that he is the owner, and has capacity to transfer the shares. This proposition does not rest upon any view of the negotiability of the stock, but on general principles appertaining to the law of estoppel. * * * When the defendant issued its certificates to William T. Rich it affirmed to all persons who might deal with him that he owned a certain portion of the capital stock, and had full power to transfer it. Any purchaser has a right to rely upon this statement, and to claim the benefit of an estoppel in its favor."

The sum of the whole matter is succinctly expressed by Justice Davis in the Lanier Case, supra, where, referring to stock certificates of national banks, which institutions, it seems, are not permitted to make valid loans or discounts upon the security of their own stock, he said:

"It is no less the interest of the shareholder than the public that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage."

In quoting this language with evident approval, the Court of Appeals in a recent case (Buffalo German Ins. Co. v. Third National Bank, supra) saw fit to add:

"Nor can it be said that this plaintiff, when offered by Levi the certificates of stock as collateral security for a loan of money, was chargeable with notice of any lien of the bank thereon. The certificates were in his possession, and were delivered to the plaintiff, and the printed matter thereon was of no importance, inasmuch as the public law, under which the bank was organized, prohibited it from making any loan or discount on the security of the shares of its own capital stock. The plaintiff could not be bound by notice of something which the law prohibited."

Which, it seems to us, is equivalent to saying that in that case the notice was no notice, and that, without any notice, a bona fide transfer of bank stock for value confers absolute and unqualified ownership upon the transferee. Upon the authority of these and other like precedents our conclusion is that the plaintiff's title to the 30 shares of stock embraced in certificate No. 72 is superior to and freed from the lien of the bank, and that the judgment appealed from should therefore be affirmed.

Judgment affirmed, with costs. All concur.