BOND v. ATLANTIC TERRA COTTA CO. et al.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. CORPORATIONS ( 40*)—CERTIFICATE OF INCORPORATION—AMENDMENT—CLASSIFICATION OF DIRECTORS.

Stock Corporation Law (Consol. Laws, c. 59) § 18, provides that a corporation may alter its certificate of incorporation so as to include any purposes, powers, or provisions which at the time of alteration may apply to corporations engaged in the business of the same general character, or which might be included in the certificate of a corporation organized under any general law or business of the same general character. *Held* to authorize an amendment of the original certificate so as to provide for the classification of directors as might have been done in the certificate pursuant to statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 124; Dec. Dig. § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

2. CORPORATIONS (§ 448*)—CONTRACTS BEFORE INCORPORATION—ADOPTION OR RATIFICATION.

Promoters cannot contract for a corporation, which comes into exist- ence unfettered by any contract obligations, and it will be bound by their agreement only on subsequent acts of its board of directors or officers, within the apparent scope of their duties, ratifying, accepting, or adopt- ing it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789– 1792; Dec. Dig. § 448.*]

3. CORPORATIONS (§ 370*)—CONTRACTS BEFORE INCORPORATION—ADOPTION OR RATIFICATION.

It is not competent for a corporation, by adopting or ratifying an agreement made with promoters or otherwise, to provide for the manage- ment of its affairs in a manner different from that prescribed by the stat- ute under which it was organized.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 370.*]

4. CORPORATIONS (§ 187*)—NUMBER OF DIRECTORS—INCREASE OR DECREASE THEREOF.

While it may be competent in some cases for stockholders, in whom the authority to change the number of directors is exclusively vested by Stock Corporation Law (Consol. Laws, c. 59), § 26, to bind themselves by an agreement not to exercise such power, it would seem that it would not be binding on subsequent owners of stock who purchased it in good faith and without notice thereof.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 187.*]

5. CORPORATIONS (§ 187*)—NUMBER OF DIRECTORS—INCREASE OR DECREASE THEREOF.

An agreement between substantially all the stockholders of three com- panies and a committee, appointed to organize a new corporation to con- solidate them, provided that the committee should increase to 12 the board of directors of the new company as soon as it accepted a proposi- tion for the purchase of the stock and assets of the three companies. Pursuant thereto, the committee, who then owned all the stock of the new corporation in connection with an amended certificate increasing its stock, filed a written consent that the directors should be increased to 12, 4 of whom should hold office till the next annual meeting in 1908, 4 till the annual meeting in 1909, and 4 till the annual meeting in 1910. The original certificate did not classify the directors as might have been done pursuant to the statutes, and it was never amended as authorized by law, but the by-laws, which provided that they might be "altered, amended, or added to" by vote of the stockholders at an annual or special meeting, classified the directors in the manner stated in the consent. Held, that neither the agreement, nor the action of the corporation in consummation thereof, nor the consent filed, nor the by-law as to classi- fication, was intended as a contract that the stockholders should not ex- ercise their statutory authority to increase or decrease the number of di- rectors, and that if it was so intended it could not be given effect against subsequent stockholders.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 187.*]

6. CORPORATIONS (§§ 158, 197*)—STOCKHOLDERS—MANAGEMENT OF CORPORATE AFFAIRS.

A stockholder may not be deprived of his right to participate in the management of corporate affairs by voting on his stock in the same man- ner and to the same extent as others in the proportion that his holdings bear to theirs, and, unless the statutes expressly so provided before he be- came a stockholder, his share or interest in the corporation cannot be af- fected without his consent, or, except in case of stock issued for property,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

without affording him an opportunity to purchase a share or interest in proportion to his holdings in any increase of stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 449, 587–592, 747, 749–763; Dec. Dig. §§ 158, 197.*]

7. CORPORATIONS (§ 40*)—CONSTITUTIONAL LAW (§ 126*)—STOCKHOLDERS—VESTED PROPERTY RIGHTS.

A stockholder's vested property rights of which he cannot be deprived under the reserved power to amend the statute, certificate of incorporation, or by-laws, are not affected in contemplation of law by the number of directors.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 40;* Constitutional Law, Dec. Dig. § 126.*]

8. CORPORATIONS (§ 189*)—MANAGEMENT OF CORPORATE AFFAIRS—MEETINGS OF STOCKHOLDERS—INEFFECTIVE ORDER.

An order enjoining a corporation, its officers, agents, and representatives, from receiving or accepting votes or recording any act, or doing anything to reduce the number of its directors, cannot be sustained, for it runs only against the corporation, which is neither threatening to decrease the number of directors nor has such power, and the acts of the officers enjoined are merely incidental to the right of the stockholders to meet and vote on the question.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 189.*]

Miller and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Suit by Alfred H. Bond against the Atlantic Terra Cotta Company and others. From an order enjoining defendant corporation, its officers, agents, and representatives, from receiving or accepting votes or recording any act or doing anything which will aid, accomplish, or result in reducing the number of directors of the company from 12 to 6, defendants appeal. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Graham Sumner, for appellants.

John M. Perry, for respondent.

LAUGHLIN, J. When the injunction order was obtained, a meeting of the stockholders had been duly called for January 19, 1910, to vote on reducing the number of the directors of the defendant corporation from 12 to 6.

The defendant corporation was organized under the laws of the state of New York for the purpose of manufacturing and selling architectural terra cotta. It was organized by a committee of three individuals representing "substantially all of the stockholders" of three corporations then existing and conducting a like business. These corporations were the Perth Amboy Terra Cotta Company, Excelsior Terra Cotta Company, and Atlantic Terra Cotta Company. An agreement was made between "substantially all of the stockholders" of these corporations and a committee consisting of one representative of each of the companies, in writing on the 10th day of December, 1906, with a view to carrying out a plan for the consolidation of the three companies by forming a corporation under the laws of New York.

The plaintiff owns 328 shares of the capital stock of the defendant corporation, and brings this action to prevent the reduction of the number of the directors from 12 to 6, upon the theory that the corpora-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion and all of its stockholders are precluded by the agreement in question, and by subsequent acts of the corporation pursuant thereto, from ever exercising the statutory authority conferred upon the stockholders by section 26 (formerly section 21, c. 564, Laws 1890) of the stock corporation law (Consol. Laws, c. 59, § 26) to decrease the number of the directors.

The agreement is not set forth in full in the record, but sufficient appears to show that it was therein provided that, on a certain percentage of the stockholders of each company depositing their stock with the committee, the committee should organize a new corporation with a view to exchanging its capital stock for the capital stock of the old companies upon a basis provided for in the agreement. The provisions of this agreement, so far as they are quoted in the record, are as follows:

"The certificate of incorporation of the new company shall provide for cumulative voting, * * * the committee shall cause the board of directors of the new company to be increased as soon as it shall have accepted the said proposition for the purchase of the stock and assets of the said terra cotta companies hereinabove referred to, to twelve directors who shall be divided into three classes to hold office respectively for one, two and three years and at the expiration of each of said terms four directors shall be elected for three years. * * * The committee shall also cause to be elected as directors for the aforesaid one-year term, W. Harris Roome (one of the defendants herein), Dwight W. Taylor, Henry M. Watson (one of the defendants herein), George P. Putnam; for the term of two years John N. Partridge (one of the defendants herein), Madison Grant, Edward J. Hall (one of the defendants herein) and William Manice; for the three-year term De Forest Grant, Joseph Winterbotham, Jr., William H. Powell (one of the defendants herein) and Charles B. Ludwig."

On the 28th day of February, 1907, the committee duly filed a certificate incorporating the defendant company under the laws of New York. This certificate provided that the capital stock should be $1,000, which was subscribed for by the incorporators, that there should be three directors, and that the incorporators should act as temporary directors, and it contained the following provisions:

"At all elections of directors of the corporation each stockholder shall be entitled to as many votes as shall equal the number of his shares of stock multiplied by the number of directors to be elected, and he may cast all such votes for a single director or may distribute them among the number to be voted for, or any two or more of them as he may see fit."

On the 29th day of March, 1907, the members of the committee, as owners of all of the stock of the new corporation, filed a certificate increasing its capital stock to 30,000 shares of the par value of $100 each, one-half preferred and one-half common stock, and on the 10th day of April thereafter they filed a consent in writing, in the office of the Secretary of State and of the clerk of the county of New York, the material part of which is as follows:

"That the present number of directors, viz., three, of the said corporation, be increased to twelve, four of whom shall hold office until the next annual meeting of stockholders in 1908, four of whom shall hold office until the annual meeting of stockholders in 1909, and four of whom shall hold office until the annual meeting of stockholders in 1910, and that the successors to each class shall hold office for three years."

The original certificate of incorporation contained no provision for the classification of the directors, and it was never amended as authorized by law. The by-laws of the corporation were, however, amended so as to classify the directors in the manner stated in said consent herein quoted; but such by-laws expressly provided that they might be "altered, amended or added to" by an affirmative vote of the stockholders representing the majority of the whole capital stock, either at an annual meeting or at a special meeting called for that purpose. The original certificate might have contained a provision for the classification of the directors, and with respect to the term for which each class should hold office (sections 10 and 24, General Corporation Law, being chapter 23 Consol. Laws), for it is provided in said section 26 of the stock corporation law, which authorizes the increase or reduction of the number of directors, that:

"If the original or an amended certificate of incorporation of the corporation shall provide that the directors shall be divided into two or more classes, whose terms of office shall respectively expire at different times, the additional directors shall be divided among such classes as nearly as practicable in proportion to the respective numbers of directors constituting each class prior to such increase."

That section provides two methods for increasing or reducing the number of directors. The first is by action of the stockholders owning a majority of the stock of the corporation, at a meeting to be held on two weeks' notice in writing to the stockholders of record as therein provided, and in that case proof of service of such notice is required to be filed in the office of the corporation "at or before the time of such meeting," and the proceedings of the meeting are required to be entered in the minutes of the corporation and a transcript thereof, verified by the president and secretary of the meeting, is required to be filed "in the offices where the original certificates of incorporation were filed." The second method is by the unanimous consent of the owners of all of the stock issued and outstanding, without any meeting, and in that case the consent of such stockholders in writing signed by them or by their duly authorized proxies with an affidavit of the custodian of the stock book of the corporation, stating that the persons who have signed the consent, "either in person or by proxy, are the holders of record of the entire capital stock of said corporation issued and outstanding," is required to be filed in said offices.

Section 18 of the stock corporation law (chapter 59, Consol. Laws) would doubtless authorize the amendment of the original certificate so as to provide for the classification of the directors as was provided in the by-laws and as might have been provided in the original certificate of incorporation. It provides as follows:

"Any stock corporation heretofore or hereafter organized under any general or special law of this state may alter its certificate of incorporation so as to include therein any purposes, powers or provisions which at the time of such alteration may apply to corporations engaged in a business of the same general character, or which might be included in the certificate of incorporation of a corporation organized under any general law of this state for a business of the same general character, by filing in the manner provided for the original certificate of incorporation an amended certificate, executed by the president and secretary, stating the alteration proposed, and that the same has been duly authorized by a vote of a majority of the directors and also by a

vote of stockholders representing at least three-fifths of the capital stock, at a meeting of the stockholders called for the purpose in the manner provided in section sixty-three of this chapter, and a copy of the proceedings of such section, verified by the affidavit of one of the directors present thereat, shall be filed with such amended certificate."

But, as has been seen, that was not done. It will be observed that this section does not provide for an amendment of the certificate of incorporation by consent of the stockholders, but requires that such amendment be authorized by a vote of the majority of the directors and by a vote of stockholders representing three-fifths of the capital stock, and that the certificate shall be executed by the president and secretary of the corporation, and that a copy of the proceedings of the stockholders with respect thereto, verified by the affidavit of one of the directors who was present, shall be filed with the amended certificate.

The plaintiff held stock in the old Atlantic Terra Cotta Company of the par value of $10,000, which he surrendered to the committee and received 164 shares of the preferred stock and a like number of shares of the common stock of the new company in return therefor. All of the stock of the old corporations was transferred to the new in consideration for capital stock of the new company as contemplated by said agreement. In consummating this arrangement, 28,206 shares of the 30,000 shares of the capital stock of the new company were used, leaving a balance of 1,794 shares, and it further appears that 1,600 of these remaining shares have since been issued without reference to said agreement of December 10, 1906, for the purchase of property by the company, and some of these shares have passed into the hands of the individual defendants as voting trustees. It further appears that shares of the capital stock of the defendant company originally issued for stock in the other companies have to a considerable extent changed hands and are now held by the voting trustees, and that "a substantial number" of shares are now held by the voting trustees which were not issued in consummating said agreement and were not in any manner connected therewith. It is not alleged, nor is it shown, either that the corporation or the voting trustees or the owners of the stock held by them accepted or became in any manner bound by said agreement of December 10, 1906, otherwise than as has been stated.

There is no charge of fraud or bad faith in the contemplated action which might justify or require the intervention of a court of equity. The plaintiff bases his right of action upon the ground that these facts render said agreement binding upon the corporation and upon all stockholders for all time, and that it precludes a change in the number of the directors. In other words, the plaintiff contends that the proposed reduction of the number of directors will interfere with a vested contract right which he and other stockholders derived under said agreement of December 10, 1906, which he claims was adopted by the new corporation by accepting the stock of the old corporations and issuing its stock in exchange therefor. The plaintiff has appealed to a court of equity, and he is met by a serious charge that the suit has not been brought in good faith, but in the interest of a rival company, which he and associates, who are also stockholders of the defendant

company, have organized, and to which they have agreed to transfer their holdings in this company.

We do not deem it necessary to decide whether plaintiff should be denied relief on that ground. The law is well settled that the promoters could make no contract for the corporation, and that it came into existence unfettered by any contract obligations and could become bound by said agreement only by subsequent acts of its board of directors or officers within the apparent scope of their duties by ratifying or accepting or adopting it. Munson v. Railroad Co., 103 N. Y. 58, 8 N. E. 355; Oakes v. Water Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544; Dillon v. Commercial Cable Co., 87 Hun, 444, 34 N. Y. Supp. 370; Martin v. Remington Martin Co., 95 App. Div. 18, 88 N. Y. Supp. 573; Rogers v. Texas Land Co., 134 N. Y. 197, 32 N. E. 27.

It is perfectly clear that it is not competent for a corporation, by adopting or ratifying an agreement made with promoters or otherwise, to provide for the management of the corporate affairs in a manner different from that prescribed by the statute under which the corporation was organized, for that would contravene the public policy of the state. It is contended, however, by the learned counsel for the respondent, that no public policy of our state is contravened by an agreement by which the corporation and its stockholders bind themselves not to exercise a discretionary power given by statute, such as authority to increase or decrease the capital stock or to increase or decrease the number of the directors, and cases in other jurisdictions are cited in support of this contention. Loewenthal v. Rubber Reclaiming Co., 52 N. J. Eq. 440, 28 Atl. 454; In re Newark Library Ass'n, 64 N. J. Law, 217, 43 Atl. 435; Hayes v. Commonwealth, 82 Pa. 518. Those decisions are clearly distinguishable from the case at bar. In Lowenthal v. Rubber Reclaiming Co. a corporation had been formed not, as here, to merge or consolidate existing companies, but to lease their plants, and the stockholders of the old companies retained their stock therein, and the stock of the new company was issued to the old companies for the leases. Each of the old corporations was to have representation in the board of directors of the new corporation, and this was secured by a by-law which provided for cumulative voting, and its continuance was secured by a provision to the effect that the by-laws could only be amended by a two-thirds vote. The Legislature subsequently amended the law upon which the company was incorporated by providing that by-laws might be amended by a majority vote. The court held that the amendatory statute could not annul the by-law or affect the rights of the stockholders, but it was not even suggested that the stockholders, acting under the by-law and by the vote therein prescribed, could not have changed the plan for cumulative voting. The facts herein stated clearly distinguish the case at bar from the other authorities relied on by respondent, and it would not be profitable to point out in detail the distinction between this case and each of them. The case, as we view it, does not necessarily present the question as to whether the stockholders and corporation may by agreement debar themselves from exercising discretionary statutory rights;

but we deem it proper to observe that the authority to increase or decrease the number of the directors of a corporation is, by the provisions of law herein quoted, vested not in the corporation, to be exercised by its board of directors, but exclusively in the stockholders, and, while it may be competent in some cases for stockholders to bind themselves by such an agreement, it would seem that the agreement would not be binding on subsequent owners of the stock, who purchased the same in good faith and without notice of the agreement (see Munson v. Railroad. Co., 103 N. Y. 58, 8 N. E. 355; Kent v. Quicksilver Mining Co., 78 N. Y. 159–184; Driscoll v. West Bradley Co., 59 N. Y. 96; Leitch v. Wells, 48 N. Y. 585), for it is contemplated that the capital stock of business corporations shall frequently change hands, and in some respects elements of negotiability attach thereto, and it is quite likely that such stock could not readily be sold in the market if it may be subject to any restrictions other than those provided in the statute under which it was issued. Lyman v. State Bank of Randolph, 81 App. Div. 368, 80 N. Y. Supp. 901; Am. Press Ass'n v. Brantingham, 75 App. Div. 435, 78 N. Y. Supp. 305.

We are of opinion, however, that neither the agreement of December 10, 1906, nor the action of the corporation in consummation thereof, nor the consent filed purporting to increase the number of directors to 12, nor the by-law with respect to the classification of the 12 directors, was intended to constitute a contract or agreement that the stockholders should not thereafter • exercise their statutory authority to increase or decrease the number of the directors, and, if it were so intended, such intention cannot be given effect as against subsequent stockholders. As well might it be said of any corporation that those who purchase stock under the original certificate of incorporation and by-laws have a vested contract right with one another and with the corporation to have no change made in the amount of the capital stock or in the number of directors notwithstanding the fact that both are authorized by statute and by the reserved power to amend the by-laws. The cases cited in support of the contention of the respondent are authorities for the familiar doctrine that the certificate of stock or of membership based on the original certificate of incorporation and by-laws constitute contracts between the corporation and the stockholders, and that changes may not be made in the certificate of incorporation or in the by-laws or even in the statutes that will impair vested property rights of stockholders or members of the corporation by virtue of their contracts evidenced by certificates of stock or of membership. See Kent v. Quicksilver Co., supra; Parish v. New York Produce Exchange, 169 N. Y. 34, 61 N. E. 977, 56 L. R. A. 149; Farmers Loan & Trust Co. v. Aberle, 19 App. Div. 79, 46 N. Y. Supp. 10.

The proposed decrease in the number of the directors will not impair any vested property right of the plaintiff. It is not proposed to forfeit his stock or to affect his share and interest in the corporation, or to deprive him of an equal voice in the management of its affairs with any other stockholder owning the same amount of stock. His complaint is that on the present basis, with four directors elected an-

nually, he may combine with other stockholders owning one-fifth of the capital stock, and by cumulating their votes secure representation in the board of directors; and that, by the proposed action in reducing the number of directors to be elected annually to two, the percentage of stockholders who might combine, and thus secure representation, would be materially increased, and that it would be necessary for him to combine with the owners of one-third instead of one-fifth in order to insure the election of a director of their choice. We think this is not a vested property right within the contemplation of the law which may not be affected under the authority conferred by statute and reserved in the by-laws. He neither had at the outset, nor is there any evidence that he has now, any agreement with other stockholders with respect to combining their votes, and if he had it would not be pursuant to any statutory authority, and neither the corporation nor the other stockholders would be obliged, in exercising their statutory powers, to respect the same. A stockholder may not be deprived of his right to participate in the management of the affairs of the corporation by voting on his stock in the same manner and to the same extent as other stockholders in the proportion that his holdings bear to theirs; and his share or interest in the corporation cannot be affected (unless the statutory law expressly so provided before he became a stockholder) without his consent or (except in the case of stock issued for property) without affording him an opportunity to purchase a share or interest, in proportion to his holdings, in any increase of the capital stock so as to enable him, if he so desires, to retain the same proportionate share or interest in the corporation. Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969; Lord v. Equitable Assurance Ass'n, 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. (N. S.) 420; Page v. Am. & British Mfg. Co., 129 App. Div. 346, 113 N. Y. Supp. 734; Kinnan v. Sullivan Co. Club, 26 App. Div. 213, 50 N. Y. Supp. 95. His vested property rights of which he cannot be deprived under the reserved power to amend the statute, certificate of incorporation, or by-laws are not in contemplation of law affected by the number of directors to whom the management of the property and affairs of the corporation are to be committed (Looker v. Maynard, 179 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79; Miller v. State, 15 Wall. 478–498, 21 L. Ed. 98), which is a matter of administration vested exclusively in the stockholders to be exercised as authorized by law.

It is to be borne in mind that plaintiff, long since ceased to be a stockholder of the old company, and that whatever contract rights he has now with the defendant corporation or its stockholders are those arising out of his certificates of stock which were issued under a statute providing that the number of directors might be increased or diminished, and with no provision in the certificate of incorporation or in the by-laws purporting to limit or restrict the exercise of this right by the stockholders, and with an express provision in the by-laws with respect to the number of the directors which was expressly made subject to alteration or amendment. These provisions were inserted in the promoters' agreement merely as authority and directions from the

stockholders of the old companies to the committee who were their agents in organizing the new corporation. When the new corporation was launched as contemplated, the agreement between the stockholders of the old companies and the committee was fully performed. Its force was spent, and it now embodies no rights or obligations either on the part of the stockholders of the old companies or on the part of the new corporation or its stockholders; nor was it by any ·fair construction of the language employed intended that it should survive the fulfillment of its functions. After that time the parties must have contemplated that the statutes of this state should govern the corporation and prescribe the powers and rights of its stockholders. The parties are presumed to have known that under the statutory law of this state the stockholders could increase or decrease the number of the directors, for it was then so provided in section 21 of the stock corporation law; and if it had been intended to withhold this power and authority for all time to come, or for any time, it is .probable that an attempt would have been made to incorporate such ·a provision in the original certificate, or that it would have been amended, and that the by-laws containing the provision would not have `been left expressly subject to amendment, and it is reasonable to infer that appropriate language would have been employed to indicate such intention, and, had it been, it might be necessary to decide whether it was competent · for the corporation or its stockholders to make such a contract and whether it would be binding on future stockholders; but, for the reasons stated, those questions are not necessarily presented for decision now. This injunction order could not be sustained in any event, for it runs only against the corporation, which is neither threatening to decrease the number of directors, nor has it such power. The acts of the officers of the corporation which have been enjoined are merely incidental to the right of the stockholders to meet and vote on the question. If the stockholders have a right to meet and vote, the officers of the corporation cannot be enjoined in an action against the corporation from performing the duties enjoined, not on the corporation, but on them, of carrying into effect, in the manner provided by law, the will of the stockholders.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs.

INGRAHAM, P. J., and CLARKE, J., concur.

MILLER, J. I dissent.' The defendant corporation was not bound by the agreement of its organizers unless it adopted that agreement; but, with full knowledge of its provisions, it changed its plan of organization to comply with it, and pursuant to it received the stock, and thereby the assets, of the three original corporations. It is settled in this state that, under such circumstances, it became bound by the contract. Bommer v. Am. Spiral & Hinge Mfg. Co., 81 N. Y. 468; Rogers v. N. Y. & T. L. Co., 134 N. Y. 197, 32 N. E. 27; Oakes v. C. W. Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544. The question in the first instance, then, is one of construction.

By the contract the parties stipulated for a plan of organization of the new corporation which, so far as material, involved three essentia.

elements: (a) Cumulative voting; (b) a directorate of twelve members; (c) the division of the directors into three classes of four each, to be elected for terms of three years. By that plan, the plaintiff and his associates, who were to, and did, acquire 20 per cent. of the stock of the new company in exchange for their stock in one of the old companies, were assured that they could elect one of each class of directors. There can be no doubt that the parties intended the proposed plan to be permanent, for it was idle to adopt it if, immediately thereafter, a majority of the stockholders could change it. The fact that the parties did not in terms stipulate against a change seems to me of no moment, because, construed according to its manifest purpose, the contract imports an understanding that the plan agreed upon should not be subject to change in any of its essential features. No doubt that contract was performed. The certificate of incorporation of the new company did contain the provision for cumulative voting; its directors were increased to 12 by the written consent of all its stockholders as provided by statute; its by-laws were amended so as to provide for the stipulated classification and manner of election of the directors; and, in reliance upon such performance, stockholders of the old companies accepted stock of the new company, in exchange for the stock deposited by them with the committee. Thereby, the contract made by the organizers of the new corporation became a compact, binding upon it and all of its stockholders. Kent v. Quicksilver Mining Co., 78 N. Y. 159; Loewenthal v. Rubber Reclaiming Co., 52 N. J. Eq. 440, 28 Atl. 454. The contract is evidenced by the certificate of incorporation, the by-laws, and the said consent of stockholders, and is to be interpreted in the light of the contract of which they were a part performance.

The learned counsel for the appellant boldly asserts that the purpose of the change now proposed is to deprive the plaintiff and his associates of the power to elect a representative on the board of directors, and that that will not violate the contract in question. The argument is that, as the contract did not expressly provide against a subsequent reduction of the number of directors, a majority of the stockholders, upon making the increase stipulated for, could immediately turn about and decrease the number, pursuant to the statute which authorizes the number of directors to be increased or diminished, and pursuant to the general provision of the original by-laws, not changed by the amended by-laws, that they might be "altered, amended or added to." But contracts have to be performed according to their spirit and intent. An agreement to do a thing imports an agreement not to undo it, immediately it is done. The plaintiff and his associates accepted the stock of the new company in exchange for the stock surrendered, upon the faith of the agreement, adopted by the new company, which assured them a voice in the management of the company. It is not supposable that the plan of organization agreed upon was a mere temporary expedient. The right to vote, incident to stock ownership, is a property right. Lord v. Equitable Assurance Society, 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. (N. S.) 420. A fortiori, the right to elect a representative on the board of directors, secured by contract, is a property right of equal inviolability. The general power of amendment, reserved by the by-laws, like the reserve power in the Legislature to alter,

suspend, or repeal charters, is subject to the qualification that vested rights cannot be infringed. Kent v. Quicksilver Mining Co., supra; Lord v. Equitable Assurance Society, supra.

I fail to see how any question of public policy is involved. Indeed, it might be argued that it is in the interest of public policy to give minority stockholders representation on boards of directors. The statutes of this state permit cumulative voting, and the statutes of many states have been amended so as to provide for it. Such was the statute involved in Looker v. Maynard, 179 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79; but that case did not decide the question before us. A statute which merely permits the number of directors to be increased or decreased by the action of the stockholders is not contravened by an agreement between the stockholders and the corporation, which prevents such decrease. If the proposed change does not violate the contract, an amendment of the certificate of incorporation, striking out the provision for cumulative voting, would not violate it. One is as essential to the scheme agreed upon as the other, and it is of no consequence that one was incorporated in the certificate, and that the other was provided for by the consent of the stockholders, subsequently filed pursuant to the statute. That consent in effect amended the certificate of incorporation.

But it is said that the agreement is not binding on subsequent stockholders, and that the proposed action is to be taken by them, not by the corporation. That argument carried, to its logical conclusion, would enable a corporation, upon a change of its membership, to disregard its contract obligations. The corporation is but a collective body of stockholders, and the latter should not be permitted to do, individually, what they cannot do collectively. A purchaser of stock in a corporation succeeds to the rights of his vendor, but acquires no superior rights as a member of the corporate body. In this case the certificate of incorporation, as in effect amended by the consent of the stockholders and the by-laws, prescribed what those rights were. No doubt the provisions in question would have been subject to change but for the contract pursuant to which they were adopted and pursuant to which the corporation acquired its property. No authority has been cited and no principle of law has been stated which requires us to hold that new members of a corporation may change its plan of organization for the purpose of depriving minority stockholders of representation on the board of directors, where the right to such representation is secured by a contract, adopted by the corporation, its incorporators, and original stockholders, merely because such new stockholders acquired their stock in ignorance of such contract. As the contract in question does not contravene any statute of the state or any rule of public policy, it seems to me that it is as binding upon the corporation and its stockholders as any valid contract could be. While the courts will not interfere with the internal administration of corporations, they will enjoin the infringement of contract rights.

I think the order appealed from might well have enjoined the defendants as individuals, and vote to affirm it.

SCOTT, J., concurs.